# LITTLE *v.* FIRST FEDERATED LIFE INSURANCE COMPANY

[No. 42, September Term, 1972.]

*Decided November 13, 1972.*

2

The cause was argued before MURPHY, C. J., and McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*John W. Hessian, III*, for appellant.

*John E. Sandbower, III*, with whom were *Michael A. Pretl* and *Smith, Somerville & Case* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This case comes here on appeal from the Circuit Court for Baltimore County where Judge MacDaniel granted a motion for summary judgment in favor of First Federated Life Insurance Company, appellee. Marsby C. Little, appellant, requests us to reverse that judgment, establish that he is entitled to receive monetary benefits under an insurance policy issued by First Federated and remand the case for a determination of the amount of those benefits.

Mr. and Mrs. Little, subject to a purchase money mortgage in favor of Towson Federal Savings and Loan Association, are joint owners of their home located at 27 Thornhill Road in Lutherville, Maryland. In the summer of 1968 Mr. Little, then sixty-four years old, was in-

vited by Towson as one of its mortgagors to participate in a group policy of mortgage disability insurance under a master policy which had been issued to it by First Federated. The master policy became effective on April 1, 1968 and covered Towson's participating mortgagors to the extent of their outstanding mortgage indebtedness in the event of a physical disability. Mr. Little accepted the invitation and was issued a certificate of individual insurance. This granted him membership in the group plan effective on August 1 of that year. Although appellee renewed the master policy with their policyholder, Towson, on April 1, 1969, soon thereafter, the insurance company stated that the program as written was actuarially unsound and an upward adjustment of the premium was indicated. Rather than face the prospect of a substantial increase in premium rates as authorized by the policy, the Association resolved to terminate the existing contract and accept in its place a new one having modified terms, conditions and eligibility requirements. Consequently, the old policy was terminated and a new one became operative simultaneously at 12:01 a.m. on August 1, 1969. The eligibility requirements of the new policy excluded mortgagors who had passed their sixty-fifth birthday and, as Little had reached that age in January of 1969, he was not qualified for coverage. Accordingly, appellee advised Little that when the new policy came into effect at 12:01 a.m. on August 1, 1969 he would no longer be entitled to any benefits under the original policy. Appellant unsuccessfully protested this termination, first to Towson, then to its insurance adviser and finally to the State Insurance Commissioner.

On April 25, 1970 Little suffered a heart attack and was hospitalized under the diagnosis of myocardial infarction. When his claim for indemnification of his monthly mortgage payments was refused by First Federated, he instituted this declaratory judgment action to determine his rights under the insurance plan. Appellant's ingenious theory for recovery is based on an imaginative interpretation of his certificate of individual in-

surance. The third paragraph of page one of this certificate reads:

"This Certificate takes effect at 12:01 A.M. Standard Time at the address of the Policyholder on the Effective Date shown above and continues in force until 12:01 A.M. Standard Time on the date of termination as set out in the paragraph entitled 'Termination of Individual Insurance'."

The provision entitled "Termination of Individual Insurance" specifies that:

"The insurance of Insured Mortgagor, shall automatically terminate upon the date of the first of the following events to occur:
a. the date the indebtedness is discharged;
b. the date the indebtedness is transferred to another mortgagor;
c. the date of the mortgagor's 70th birthday;
d. the next premium due date following the Termination of the Policy;
e. the end of the period for which premium is paid if further premium payment is not made as agreed."

Little seizes on subsection d of this list of termination events as the basis for his theory. He claims that under his individual insurance certificate he is required to pay a "per annum" premium [1] in the amount of $120.72 which becomes due on August 1 of each year, the anniversary of his certificate. And he contends that since the original master policy was not terminated until 12:01 a.m. Au-

---

1. The heading of Little's Certificate of Insurance reads as follows:

| Age | Account Number | Certificate Number | Effective Date |
|-----|----------------|--------------------|----------------|
| 64 | 1852-2 | 23674 | 8/1/68 |

| Monthly Indemnity | Premium | Payable |
|-------------------|---------|---------|
| $175.00 | $10.06—Month | $120.72—Per Annum |

gust 1, 1969, the same day his premium was due, then, pursuant to subsection d, his coverage would continue until his "next premium due date" following the date of termination. Appellant reasons that the "next premium due date" following termination could not refer to the one on the same day as termination but must be his "next" one due on August 1, 1970. As Little was stricken on April 25, 1970, under his theory, he is covered.

Ironically, the insurance company feels it would be shocking to allow recovery based on such a technicality and urges that the running of the clock for sixty seconds into August 1 should not extend appellant's coverage past this date.[2] But, we agree with appellant that the benefits of the policy continued for him past 12:01 a.m. August 1, 1969 to the "next premium due date following the Termination of the Policy." In so doing, we note only that the insurance company fixed the date and moment of termination and it was its decision to extend the prior policy that one more minute. However, the issue then becomes to whose "next premium due date" subsection d refers and whether that date arrived before or after Little's myocardial infarction. The determination of this issue requires an examination of the language used by the parties in their agreement. In conducting this review we recognize that a policy of insurance is like any other contract and is to be read and construed in the same way. *Watson v. U.S.F. & G., Co.,* 231 Md. 266, 189 A. 2d 625 (1963). While it is true that the cardinal rule of construction is to give effect to the intent of the parties, *Schapiro v. Jefferson,* 203 Md. 372, 100 A. 2d 794 (1953), when the language of a contract is clear and unambiguous, the intention of the parties entering into the agreement should be gathered from the ordinary meaning of the words they have selected. *Coopersmith v. Isherwood,* 219 Md. 455, 150 A. 2d 243

2. As an interesting aside, we note that the running of the clock into August 1 had apparently progressed further than the sixty seconds appellee indicates. Since, on August 1, in Maryland daylight saving time was officially in effect, the 12:01 a.m. Standard Time referred to in the certificate was in reality 1:01 a.m.

(1959); *Weber v. Crown, etc., Corp.*, 214 Md. 115, 132 A. 2d 857 (1957). "Where a contract is plain as to its meaning, there is no room for construction and it must be presumed that the parties meant what they expressed" and expressed what they meant. *Kermisch v. Savings Bank*, 266 Md. 557, 295 A. 2d 776 (1972). Courts are not permitted to ignore provisions simply to avoid what may appear to be a hardship to one of the parties. Additionally, when a contract is composed of several documents, they should be construed together to garner the intent of the parties, *Mutual Life Ins. Co. v. Hurst*, 174 Md. 596, 199 A. 822 (1938), *Aetna Ins. Co. v. Houston Oil & Transport Co.*, 49 F. 2d 121 (5th Cir. 1931), *cert. denied*, 284 U. S. 628, 52 S. Ct. 12, 76 L. Ed. 535, particularly when, as here, one document makes specific reference to the other.

Bearing these rules of construction in mind, it is impossible to accept Little's contention. His daedal argument proves once more that "the art of being wise is the art of knowing what to overlook," [3] for also included on his certificate of insurance is the following information: the premium is $10.06 per month and "all statements are subject to the exceptions, limitations, provisions and other terms of the Master Policy which is available at the office of the policyholder for inspection." Although it may be arguable from the face of the certificate *alone* that his "next premium due date" is August 1, 1970 and the statement "premium $10.06 per month" is merely a plan of payment, our reading of this document shows that the phrase "premium due date" is nowhere defined in that certificate. Therefore, in accordance with the above quoted provision of that certificate, reference must be made to the Master Policy to determine if this phrase is explained therein. An examination of the policy discloses that Part I contains a reference to a day when premiums become due and that provision states:

---

3. William James, *The Principles of Psychology*, Ch. 22 (1890).

"PREMIUMS are payable by the Policyholder in amounts determined as hereinafter provided. The first premium is due on the first day of the calendar month following the date of issue and subsequent monthly premiums shall be due on the first day of each calendar month thereafter during the continuance of the Policy.

The Company reserves the right to change the premium rates on any date that the terms of the Policy are changed and, with at least 31 days prior written notice, on any premium due date on or after the first policy anniversary, but no more often than once in any twelve months period."

We note that Part I is the only place in the policy that specifies the time when the premiums are due and this refers to the premiums which are due by the policyholder (the Association) rather than to monies paid by the mortgagor. The question arises, therefore, whether the premium due date referred to in subsection d of the events which will result in "Termination of Individual Insurance" is the time described in Part I of the Master Policy. We conclude that it is. The query is readily answered when it is realized that the phrase is used in conjunction with the words "following Termination of the Policy" rather than termination of the certificate of insurance. The procedure for termination of the policy is governed by Part VIII of the Master Policy which specifies that:

"This Policy may be terminated by the Policyholder at any time by giving of 31 days prior written notice to the Company or renewal of the Policy may be refused by the Company, as authorized in Part II 'Term-Renewal Conditions'. In the event of termination of the Policy by the Policyholder or refusal of renewal by the Company, all insurance on the lives of individual Insured Mortgagors shall terminate at the end of the period for which premiums have been paid, . . ."

While the insurance company may refuse to renew,[4] only the policyholder is able to terminate the agreement. Therefore, if the insurance of the mortgagor ends upon the next premium due date following termination of the policy, an act which can only be accomplished by the Association, *a fortiori* the premium due date referred to in subsection d, and used in conjunction with this feat of the Association, must also refer to an act of the policyholder, namely its payment of the premium to the insurance company. As mandated by Part I of the policy, this is due monthly. We, therefore, decide that this is the time referred to in subsection d and while it is true that the song of the policy ended at 12:01 a.m. August 1, 1969, the melody of coverage lingered on as appellant submits, and we conclude that the final strains were dissipated on September 1, the next premium due day following termination rather than August 1 a year later. Even assuming, *arguendo,* that we accept appellant's contention that the reference in subsection d to "next premium due date" means his next premium due date, the result here would not be altered. We note that a letter written by Little and found in the record of this case attached to appellee's motion for summary judgment states: "My monthly mortgage payments include the in-

---

4. The Insurance Company has no power to terminate the Master Policy. It can only refuse to renew under Part II which reads:
"This Policy is issued for a period of twelve months from its Effective Date. . . .
The Company reserves the right to refuse renewal of this Policy on any Anniversary of its Effective Date by giving 31 days prior written notice to the Policyholder of its intention to refuse renewal.
The Company also reserves the right to refuse renewal of this Policy on any premium due date by giving 31 days prior written notice to the Policyholder:
    a. If the number of new Mortgagors who become insured under the Policy during the preceding 12 month period is less than one hundred, or 75% of the number of Eligible Mortgagors during such period; or
    b. If the Policyholder fails to perform the duties and obligations required by his acceptance of this Policy; or
    c. Upon the occurrence of any fraudulent act by the Policyholder involving this insurance coverage."

surance premium right up to my last payment on September 3rd." We conclude from this statement as well as from his answers to interrogatories filed in the case that appellant was in fact making monthly premium payments to the Association.

Our holding gives effect to all of the terms of the agreement. While parties are always permitted to take advantage of the provisions of their agreement, as technical as they may be, they cannot rely on some and at the same time ignore others. Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed.*
*Costs to be paid by appellant.*