295 So.2d 344 (1974)
Patricia L. BENTON, a Widow, Individually, and As Administratrix of the Estate of James Benton, Deceased, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a Foreign Corporation, Appellee.
No. T-350.
District Court of Appeal of Florida, First District.
June 11, 1974.
*345 William D. Barfield, Jacksonville, for appellant.
Marion R. Shepard, of Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, for appellee.
BOYER, Judge.
Appellant, plaintiff in the trial court, sued for personal injury protection benefits under a policy of insurance issued pursuant to the Florida Automobile Reparations Reform Act, Sections 627.730-627.741, Florida Statutes, F.S.A. (Chapter 71-252, Laws of Florida 1971)
Plaintiff's husband was severely injured in an automobile accident and died on the date of the accident. Appellee, State Farm Mutual Automobile Insurance Company, defendant below, had issued a "no-fault" policy to Appellant who was the owner of the vehicle in which her husband was riding at the time of the accident. Appellee paid $1,000 for funeral and burial expenses and refused to pay more. Appellant brought suit for $4,000 (the difference between the $5,000 overall limit provided in the policy and the $1,000 which had been paid for funeral and burial expenses) on the theory that since death had permanently disabled the decedent and therefore stopped the decedent's income, and had totally destroyed his earning capacity the insurer was responsible for loss of income and earning capacity during the period of disability to the extent of the maximum coverage provided in the policy.
The complaint was framed in two counts, the first count being by the Plaintiff in her individual capacity as the widow of the decedent and the second count by the Plaintiff in her capacity as administratrix of the estate of the decedent.
The trial judge dismissed both counts with prejudice, in his order of dismissal reciting:
"In construing Florida Statute 627.736(b) and the coverage thereunder provided for by Section 1 (Personal Injury Protection (b)) of the insurance contract herein sued upon, the Court rules that the only benefits provided for under either the aforesaid statute or the aforesaid provision of the insurance contract involved are payments for income lost by the covered individual from the time of the bodily injury giving rise to the claim up to the time of such covered individual's death, with the $5,000.00 limitation applying to the combined total of medical expenses, payments for loss of income and funeral, burial or cremation expenses."
The thrust of the appellant's contention is that the policy of insurance provides for loss of income caused by disability resulting from death. Appellee urges that the policy provides for loss of income from inability to work proximately caused by the injuries sustained from the date of the accident *346 to the date of death and that death terminates the inability to work and the right to recover for loss of income from that day forward.
It is necessary that we consider the statutory provisions pursuant to the mandate of which the policy was issued as well as the provisions of the policy itself.
Florida Statute § 627.736, F.S.A, provides as follows:
"627.736. Required personal injury protection benefits; exclusions; priority.
"(1) Required Benefits.  Every insurance policy complying with the security requirements of § 627.733 shall provide personal injury protection providing for payment of all reasonable expenses incurred for necessary medical, surgical, x-ray, dental, and rehabilitative services, including prosthetic devices; necessary ambulance, hospital, nursing services; and funeral and disability benefits to the named insured, relatives residing in the same household, persons operating the insured motor vehicle, passengers in such motor vehicle, and other persons struck by such motor vehicle and suffering bodily injury while not an occupant of a motor vehicle or motorcycle, all as specifically provided in subsections (2) and (4)(d), to a limit of five thousand dollars for loss sustained by any such person as a result of bodily injury, sickness, disease, or death arising out of the ownership, maintenance, or use of a motor vehicle as follows:
"(a) Medical benefits.  All reasonable expenses for necessary medical, surgical, x-ray, dental and rehabilitative services, including prosthetic devices, and necessary ambulance, hospital, and nursing services. Such benefits shall also include necessary remedial treatment and services recognized and permitted under the laws of the state for an injured person who relies upon spiritual means through prayer alone for healing, in accordance with his religious beliefs.
"(b) Disability benefits.  One hundred percent of any loss of gross income and loss of earning capacity per individual, unless such benefits are deemed not includable in gross income for federal income tax purposes, in which event such benefits shall be limited to 85 percent, from inability to work proximately caused by the injury sustained by the injured person, plus all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for the injury, the injured person would have performed without income for the benefit of his household. All disability benefits payable under this provision shall be paid not less than every two weeks.
"(c) Funeral, burial or cremation benefits.  Funeral, burial, or cremation expenses in an amount not to exceed one thousand dollars per individual."
The pertinent policy provisions are as follows:
"PERSONAL INJURY PROTECTION
"The company will pay, in accordance with the Florida Automobile Reparations Reform Act, to or for the benefit of the injured person:
(a) all reasonable medical expenses, and
(b) with respect to the period of disability of the injured person, any loss of income and earning capacity from inability to work proximately caused by the injury sustained by the injured person and all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the injured person would have performed without income for the benefit of his household, and
(c) funeral, burial or cremation expenses, incurred as a result of bodily injury,
*347 caused by an accident arising out of the ownership, maintenance or use of a motor vehicle and sustained by:
(1) the named insured or any relative while occupying a motor vehicle or, while a pedestrian, through being struck by a motor vehicle; or
(2) any other person while occupying the insured motor vehicle or, while a pedestrian, through being through being [sic] struck by the insured motor vehicle.
* * * * * *
"LIMIT OF LIABILITY; OTHER INSURANCE
"Regardless of the number of persons insured, policies or bonds applicable, vehicles involved or claims made, the total aggregate limit of personal injury protection benefits available under the Florida Automobile Reparations Reform Act from all sources combined; including this policy, for all loss and expense incurred by or on behalf of any one person who sustains bodily injury as the result of any one accident shall be $5,000; provided that payment for funeral, cremation or burial expenses included in the foregoing shall in no event exceed $1,000. If workmen's compensation benefits have been received for the same items of loss and expense under any workmen's compensation law, the total aggregate limit of personal injury protection benefits available with respect to such bodily injury shall be reduced by the amount of workmen's compensation benefits received.
* * * * * *
"DEFINITIONS
"`Bodily injury' means bodily injury, sickness or disease, including death at any time resulting therefrom; * * *"
Appellant urges that since the policy specifically defines bodily injury to include death, a fortiori, loss of income and earning capacity as a result of death are recoverable under Section "(b)" of the policy. In other words, it is appellant's contention that cases cited by appellee from other jurisdictions holding that losses attributable to injury do not include losses resulting from death are not controlling because the appellee insurer in the case sub judice has specifically defined bodily injury to mean "bodily injury, sickness or disease, including death". However, a careful reading of paragraph (b) of the policy reveals that the term "bodily injury" is not therein used. Appellant counters by pointing out that the term "bodily injury" is used in paragraph (c) of the policy and that that term therefore relates back to paragraph (b). We do not find that contention sound. When one reads the entire policy provision as one continuous sentence (which it is) one finds that paragraphs (a), (b) and (c) provide for entirely separate and divisible coverages. Paragraph (a) provides for coverage for medical expenses "caused by an accident arising out of the ownership, maintenance or use" of the insured vehicle. Paragraph (b) provides coverage for losses of income and earning capacity and for expenses incurred in obtaining from others ordinary and necessary services during the period of disability "caused by an accident arising out of the ownership, maintenance or use" of the insured vehicle. Paragraph (b) provides coverage for losses of income and earning capacity and for expenses incurred in obtaining from others ordinary and necessary services during the period of disability "caused by an accident arising out of the ownership, maintenance or use" of the insured vehicle. Paragraph (c) provides coverage for funeral, burial or cremation expenses, incurred as a result of bodily injury "caused by an accident arising out of the ownership, maintenance or use of" the insured vehicle.
Had the scrivener of the policy used the term "bodily injury" in paragraph (b) of the policy we would be inclined to agree with appellant's construction. However, that term not there being used, we do not find that it was the intention of the *348 legislature in drafting the Florida Automobile Reformations Reform Act, nor the intention of the scrivener of the subject policy, to afford coverage for loss of income or earning capacity under the above quoted portions of the Act or policy resulting from death.
We have not overlooked the use of the term "bodily injury" by the scrivener of the policy in that portion of the policy providing for limitations of liability. However, we do not construe the use of that term there to engraft the term, and policy definition of the term, onto or into paragraph (b) hereinabove quoted.
This Court is committed to the rule that insurance contracts will be construed according to the meaning which would be conveyed to a person of ordinary intelligence and experience. (Government Employees Insurance Co. v. Donald, Fla.App. (1st) 1972, 271 So.2d 189) We find that rule to be peculiarly applicable here.
Appellant also cites us to several cases holding that ambiguities in an insurance policy must be construed against the insurer and in favor of coverage. (Government Employees Insurance Co. v. Donald, supra; Joseph Uram Jewelers Inc. v. Liberty Mut. Ins. Co., Fla.App. (3d) 1973, 273 So.2d 111; Daleo v. Bert & Bette Bayfront 66 Marine, Fla.App. (3d) 1973, 273 So.2d 113; and St. Paul Fire & Marine Ins. Co. v. Thomas, Fla.App. (4th) 1973, 273 So.2d 117)
We are in complete agreement with that rule, however it is not applicable here. In order for that rule to be employed ambiguity must first exist. The language used in those provisions of the policy here under consideration, (insofar as the point before us is concerned) is clear and free of ambiguities. It is clear to us that both the statute and the policy provide that disability benefits are payable for loss of income from inability to work caused by the injuries sustained by the injured person for the period of disability, up to the limit of liability, and that when the period of disability ends benefits stop; whether disability terminates because of recovery from the injuries or because of death.
We have been cited to no Florida case on point and independent research has revealed none. However similar, though not identical, factual situations have been considered in other jurisdictions.
In Rosenberry v. Fidelity & Casualty Co. of New York, 14 Ind. App. 625, 43 N.E. 317 (1896) the insured died within one day of the accident. The policy provided for weekly indemnity, in case of total disability, for a period not exceeding 52 weeks. Plaintiff, suing as administratrix, claimed payment for 52 weeks notwithstanding her husband's death on the day of his injury. A judgment on demurrer for the defendant was affirmed. The Court said:
"* * * The argument upon which the counsel for appellant base their contention is that, because the assured was accidentally killed, he was, in the letter and spirit of the contract, totally disabled, and prevented `from performing any and all kind of duty pertaining to his occupation'; and, inasmuch as `the continuance of such disability' was without end, that it must have included `a period not exceeding fifty-two consecutive weeks.' `To say that a man is not disabled from performing the duties of a brakeman when he is killed,' counsel continue to argue, `is to quibble.' * * *"
But the Court held that liability for disability ceased at death, saying:
"* * * It is true, the meaning must be gathered from the terms employed by the parties, but these must be viewed in the light of the nature of the transaction in which the parties are engaged, and of the surrounding circumstances, and every part must be construed with reference to the entire contract. The nature of the instrument itself must be regarded, as well as the purpose which the parties had in view in executing it. City of Vincennes v. Citizens Gas Light Co., 132 Ind. 114, 31 N.E. 573. We think, when *349 the instrument is thus construed, the conclusion is inevitable that the indemnity provided for is limited to such as accrued during the lifetime of the insured, and that with his death all liability for future indemnity ceased. Had the parties intended to contract for insurance on account of the death of appellant's decedent, it would have been easy to so stipulate. The plain and obvious meaning of the policy would be violated by giving it the construction contended for by appellant. Our conclusion is that the demurrer was properly sustained. Judgement affirmed."
In Ferguson v. Penn. Mut. Life Ins. Co. of Philadelphia, 305 Ill. App. 537, 27 N.E.2d 548 (1940) the Court held that proof of disability given after the death of the insured was not "`received by the company during the continuance of said disability'" as required by the policy, saying:
"Proof of the disability of the insured not having been furnished until shortly after his death, it is urged that his `death should be construed as a continuance of disability under the terms of the policy.' This is really the only theory upon which plaintiff could possibly hope to prevail in this action, but it is so opposed to reason and contrary to the manifest intention of the parties to the insurance contract that it hardly merits serious consideration. In our opinion the supplemental agreement clearly contemplated that the benefits thereunder would inure only to the insured during his lifetime and during the continuance of his disability. Disability presupposes life. Death is the antithesis of life. (Emphasis supplied)
In Marriot v. Pacific National Life Assurance Company, (1970) 24 Utah 2d 182, 467 P.2d 891, the Court said:
"We are appreciative of the ingenuity of plaintiff's argument that when decedent was killed he was in one sense `disabled' in that he was `not able' to continue work, and thus the insurance should become effective at the end of the waiting period. However, in insurance, as in other contracts, it is proper to look to the ordinary usage and connotations of words to determine the meaning intended. * * * We think that in the frame of reference in which the word `disabled' is thus used it means something quite different from being `killed' and thus having one's life terminated entirely; and that to accept plaintiff's argument that the term `disabled' should include one who is killed, would require a hypertechnical distortion of language not in accordance with the meaning intended in the insurance contract."
We find that the learned trial judge did not err in entering the order of dismissal.
Appellant's motion for attorney's fees is denied.
Affirmed.
SPECTOR, Acting C.J., and JOHNSON, J., concur.