20593

Jeanette E. HAMRICK, Administratrix of the Estate of Dale Hamrick, Respondent, v. STATE FARM MUTUAL AUTOMOBILE IN-SURANCE COMPANY, Appellant.

(241 S. E. (2d) 548)

*H. Spencer King*, of *King & Cole*, Spartanburg, *for Appellant*,

*Ben C. Harrison*, of Spartanburg, *for Respondent*,

February 6, 1978.

LITTLEJOHN, Justice:

This action was brought by the respondent, Jeanette E. Hamrick, as Administratrix of the estate of her husband, Dale Hamrick (decedent), against the appellant, State Farm Mutual Automobile Insurance (State Farm), decedent's automobile insurance carrier. In effect at the time of decedent's death was a policy of insurance which provided

coverage pursuant to the Automobile Reparation Reform Act of 1974 (the Act). The plaintiff, which we will refer to as "the estate," seeks to recover disability benefits or loss of income alleged to have been provided by the policy of insurance and required by the Act.

The case was tried by the judge without a jury and resulted in a judgment for the estate in the amount of $3,569.07.[1] This amount represents solely the loss of decedent's earnings which would have been collected by him had he lived. State Farm appeals.

The facts out of which this claim arose are not in dispute. The decedent, on the evening of December 7, 1975, was struck by an automobile while attempting to cross Interstate Highway 85 on foot. He was pronounced dead on arrival at the hospital. At the time of his death, the policy of insurance issued by State Farm provided no fault personal injury protection (PIP) benefits in the amount of $5,000.00.

The Act, which is now codified as § 56-11-10, *et seq.,* Code of Laws of South Carolina (1976), mandates all insurance carriers writing policies of automobile liability insurance in South Carolina to provide minimum medical, hospital and disability benefits in the amount of $1,000.00, which coverage may, at the option of the insured person, be increased to $5,000.00. The policy here involved was increased to this maximum amount. These benefits, commonly referred to as PIP benefits, are payable directly to or for the person who purchases the policy (here the beneficiary is the decedent) regardless of who was at fault, when the insured suffers bodily injury as a result of an automobile accident.

There can be no question but that the statute and the policy require the payment of disability benefits while an insured person is living and recuperating. The question which we must decide is whether disability benefits provided by

---

[1] $1,430.93 had previously been paid.

the statutory mandate of coverage includes loss of income after the death of the insured.

■ A policy of insurance issued pursuant to statutory law must at a minimum give the protection therein described. It may give more protection but not less, and a policy issued pursuant to the law which gives less protection will be interpreted by the court as supplying the protection which the legislature intended. *Jordan v. Aetna Casualty & Surety Co.,* 264 S. C. 294, 214 S. E. (2d) 818 (1975)

The statute requires benefits as follows:

"§ 56-11-110. Minimum medical, hospital and disability benefits required; proof of loss of income; subrogation or assignment of benefits.

Except as otherwise provided in this article, no policy or contract . . . of liability insurance . . . shall be issued, delivered, sold or renewed in this State after October 1, 1974, unless such policy also affords the minimum medical, hospital and *disability benefits* set forth herein. . . . The minimum medical, hospital and *disability benefits* shall include up to an amount of one thousand dollars per person for payment of all reasonable expenses arising from the accident sustained within three years from the date thereof for necessary medical, surgical, chiropractic, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services; and *in the case of an income producer, payment of benefits for loss of income as the result of the accident; . . ..* The insurer providing loss of income benefits may require, as a condition of receiving such benefits, that the *injured person* furnish the insurer reasonable medical proof of his injury causing loss of income . . .." (Emphasis added.)

■ Our decision hinges largely upon the meaning of the term "disability" or "disability benefits."

The estate takes the position that the legislature intended that "loss of income" after one's death, as well as

"loss of income" while one is recuperating, be covered by the policy.

On the other hand, State Farm submits that the word "disability," as used in the statute and in the policy, refers to lack of ability to earn while one is living.

The key concept embodied in PIP no fault coverage is that an injured person needs to promptly pay expenses necessarily arising out of injuries sustained, and needs support for himself and his family during the period of recuperation. The Act appreciates the fact that contested negligence tort actions are often prolonged and do not provide for the needs of injured persons at the time when the need is greatest. It is not the function of PIP no fault insurance coverage to provide funds for the creation or enhancement of one's estate. Such funds, if collected by an estate, would be subject to the payment of debts and/or distribution among heirs, or among beneficiaries under a will. The fact that one is not entitled to PIP no fault benefits does not, of course, limit his right of action in tort. Income which might have been earned after death is properly collectible in a tort action.

The purpose of PIP no fault coverage has been declared in the statute itself and must be considered in interpreting the statute.

"§ 56-11-20.   Legislative declaration of purpose.

The purpose of this chapter is to require medical, surgical, funeral and *disability insurance benefits* to be provided without regard to fault under motor vehicle policies that provide bodily injury and property damage liability insurance, . . ." (Emphasis added.)

As indicated hereinabove, our decision hinges largely upon the interpretation of the word "disability." In its usual connotation, it implies the inability of a living person to work. In one sense of the word, a person who is deceased is truly disabled, but one does not speak of a dead person as

being disabled. We will assume that the legislature intended the use of the word "disability" in its normal sense. The estate argues that since the statute requires insurers to pay funeral expenses which would arise after death, it also intended that loss of income arising after death also be covered by the statute. We think that such a result or conclusion requires a strained construction of words which have a plain and generally accepted meaning. In the interpretation of statutes and insurance policies, the rule is the same. Words should be given their plain, ordinary meaning. In the case of *Marriot v. Pacific National Life Assurance Co.,* 24 Utah (2d) 182, 467 P. (2d) 981 (1970), the court, in construing an insurance policy, said:

"We are appreciative of the ingenuity of plaintiff's argument that when decedent was killed he was in one sense 'disabled' in that he was 'not able' to continue work, and thus the insurance should become effective at the end of the waiting period. However, in insurance, as in other contracts, it is proper to look to the ordinary usage and connotations of words to determine the meaning intended. . . . We think that in the frame of reference in which the term 'disabled' is thus used it means something quite different from being 'killed' and thus having one's life terminated entirely; and that to accept plaintiff's argument that the term 'disabled' should include one who is killed, would require a hypertechnical distortion of language not in accordance with the meaning intended in the insurance contract."

We think that the legislature intended that the amount of the disability benefits which the insured of his representatives would be entitled to receive is measured by the income which the insured would have earned from the time of the accident which results in the disabling injury, to the time at which the disability ends. The period of disability logically would terminate either upon the recovery of the insured from his injuries, or upon his death. To construe disability as

continuing after the death of the insured would be to include death benefits in the Act, thereby transforming automobile liability policies into a form of life insurance. We do not believe that the words employed in the Act are susceptible of such an interpretation.

The case of *Benton v. State Farm Mut. Automobile Ins. Co.,* Fla. App. (1st) 295 So. (2d) 344 (1974), is "on all fours" with the instant case. In *Benton,* the representative of the deceased insured sued to recover PIP benefits for loss of income caused by disability resulting from the insured's death. The plaintiff's theory was that since death had permanently disabled the decedent, thereby totally destroying his earning capacity, the insurer was responsible for loss of income during the period of disability to the extent of the maximum coverage provided in the policy. The Florida "no-fault" statute is very similar to the South Carolina Act. In denying plaintiff's recovery, the court held as follows:

"It is clear to us that both the statute and the policy provide that disability benefits are payable for loss of income from inability to work caused by the injuries sustained by the injured person for the period of disability, up to the limit of liability, and that when the period of disability ends benefits stop, whether disability terminates because of recovery from the injuries or because of death."

Ample support for the conclusion which we reach is found in analogous cases, also relied upon in *Benton.*

In *Rosenberry v. Fidelity & Casualty Co. of New York,* 14 Ind. App. 625, 43 N. E. 317 (1896), the insured died within one day of the accident. The insured's representative sought to recover the maximum number of weekly indemnity payments provided for by a policy of insurance in the event of total disability. The court, in holding that liability for disability ceased at death, stated:

"The argument upon which the counsel for the appellant base their contention is that, because the assured was acci-

dentally killed, he was in the letter and spirit of the contract, totally disabled, and prevented from performing any and all kind of duty pertaining to his occupation; . . . the conclusion is inevitable that the indemnity provided for is limited to such as accrued during the lifetime of the insured, and that with his death all liability for future indemnity ceased. . . ."

In *Ferguson v. Penn. Mut. Life Ins. Co. of Philadelphia,* 305 Ill. App. 537, 27 N. E. (2d) 548 (1940), the court stated:

"In our opinion the supplemental agreement clearly contemplated that the benefits thereunder would inure only to the insured during his lifetime and during the continuance of his disability. Disability presupposes life. Death is the antithesis of life."

In the recent case of *Griffin v. Travelers Indemnity Co.,* Fla. App., 328 So. (2d) 207 (1976), the administratrix of the deceased insured's estate sought to recover PIP benefits for loss of decedent's earning capacity. Decedent had been killed instantly. The court, in holding that the plaintiff was not entitled to a recovery for the claimed loss, stated:

"The deceased was killed instantly and, therefore, did not have a period of disability. Thus, he had no loss of income and earning capacity with respect to the period of disability. Any other construction would append to the statute an unwarranted automatic death benefit of $5,000.00, since the period of 'disability' of a dead person would extend as long as necessary to accumulate that amount based on past earnings. We find nothing to indicate that the Legislature intended such result."

Since decedent here died almost instantly, he incurred no loss of income while he was living, and was not "disabled" within the meaning of the Act. We conclude that the lower court erred in holding that the estate was entitled to recover

"disability benefits" pursuant to the Automobile Reparation Reform Act.

Accordingly, the judgment of the lower court is

Reversed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.