NATIONAL INVESTORS FIRE & CASUALTY INSURANCE COMPANY *v.* Louise EDWARDS, Administratrix of the Estate of Wilburne D. EDWARDS, Deceased

CA 81-347                                        633 S.W.2d 41

Court of Appeals of Arkansas
Opinion delivered May 5, 1982
[Rehearing denied June 9, 1982.]

*Jim O'Hara,* for appellant.

*Clifton H. Hoofman,* for appellee.

GEORGE K. CRACRAFT, Judge. The appellant appeals from a judgment entered in circuit court against it in the amount of $7,280 with interest, 12% penalty and attorney's fees of $2500. The appellee, Louise Edwards, brought this action as administratrix of the Estate of Wilburne D. Edwards, deceased, seeking to recover benefits under a work loss coverage contained in an automobile insurance policy issued by the appellant to the deceased, who died in an automobile accident. The appellant denied that the policy afforded work loss benefits to one not surviving an accident. Also, since appellee had settled with and fully released the tortfeasor, the appellant plead and now asserts that it was entitled to a credit against its liability out of the tort recovery, less the reasonable costs of collection.

The case was submitted to the trial court sitting without a jury on an agreed statement of facts. The court found that the policy provisions were ambiguous and, construing them most strongly against appellant, found that appellant was

liable for the stipulated amount of work loss benefits. The court entered judgment for the full amount of stipulated benefits with interest and costs, a 12% penalty and allowed an attorney's fee against appellant in the amount of $2500. The court in both its findings and judgment was silent on the issue of appellant's right to a credit on its liability out of the settlement proceeds.

We agree that the trial court was correct in determining that the policy did afford work loss coverage under the circumstances, but conclude that the court erred in not recognizing appellant's right of reimbursement and credit out of the third party recovery, less its proportionate part of the cost of collection as provided in Ark. Stat. Ann. § 66-4019 (Repl. 1980) and in imposing interest, 12% penalty and attorney's fees on the appellant.

## COVERAGE

According to the agreed statement of facts the appellant had issued its policy to Wilburne D. Edwards who died as a result of injury sustained in an automobile accident on July 10, 1977, at a time when the policy was in full force and effect with all premiums paid. The policy contained a "no fault" loss of income provision as required by Ark. Stat. Ann. § 66-4014 (b) (Repl. 1980). The parties agreed that if appellee was entitled to recover she would be entitled to recover $104 per week for 52 weeks as provided in the policy. It was agreed that the insured died as a result of bodily injuries and did not work or earn any income during the subsequent fifty-two week period. It was stipulated that appellee had made demand for payment under the work loss provisions on two occasions during July of 1977 but no payments were made by appellant. It was further agreed that on February 23, 1978 the appellee entered into a settlement with the tortfeasor for $50,000 and executed a full and complete release of all claims which the deceased might have against the third party.

The appellant argues that the provisions of our statute requiring this coverage do not compel an insurer to pay work loss benefits in case of death but contemplate that such benefits will be paid only to living, injured or disabled

persons. Ark. Stat. Ann. § 66-4014 (Repl. 1980) requires that every automobile liability insurance policy covering private passenger vehicles issued in this state provide minimum medical, income disability and accidental death benefits. Section 66-4014 (b) in pertinent part is as follows:

> (b) Income Disability Benefits. Seventy percent (70%) of the loss of income from work during a period commencing eight days after the date of the accident, and not to exceed fifty-two weeks, but subject to a maximum of $140 per week . . .

The appellant argues that the use of the word "disability" in the section head and the phrase "the loss of income from work during a period commencing eight days after the date of the accident," presumes a disabling injury to a living person and excludes death. It argues that the words "disability" and "death" are not synonymous relying on *Svec* v. *Allstate Insurance Co.*, 53 Ill. App. 3d 1033, 369 N.E. 2d 205 (1977); *Hamrick* v. *State Farm Mutual Automobile Ins. Co.*, 270 S.C. 176, 241 S.E.2d 548 (1978); *Cannon* v. *Georgia Farm Bureau Mutual Ins. Co.*, 240 Ga. 479, 241 S.E. 2d 238 (1978); *Western Fire Ins. Co.* v. *Wallis*, 289 Or. 303, 613 P. 2d 36 (1980); and *Griffin* v. *Travelers Indemnity Co.*, 328 So. 2d 207 (Fla. 1976). These cases in construing similar statutes and policy provisions incorporating them, do so hold. However, this argument and the cases cited would be more persuasive if we were here construing the wording of our statute or a policy provision which incorporated its words and phrases. Although our statute does require that minimum coverage be provided in all policies, it does not prohibit an insurer from providing broader coverage than that mandated. The provision contained in the policy sued on was much broader:

> "WORK LOSS" means (a) With respect to an income earner, loss of income from work the eligible injured person *would have earned had he not sustained bodily injury* . . . .

This provision does not speak of "disability," "during a period of disability" or "as a result of disability," as does our

statute or the statutes and policy provisions construed in those cases cited by appellant. It defines work loss as "loss of income from work which an eligible person *would have earned had he not sustained the bodily injury.*" The next question then is does the term bodily injury include death? The policy itself provides the answer. The policy defines the term "bodily injury" in the following manner:

"BODILY INJURY" means bodily injury, sickness or disease, *including death resulting therefrom.*

When these two policy provisions are read together they provide that work loss benefits are afforded for loss of income from work which an injured person would have earned had he not sustained the bodily injury from which his death resulted. The appellant has thus elected to draft its coverage much broader than the statute might require. While we conclude that this language is clear, if any ambiguity exists, it must be resolved most strongly against the insurance company and most favorably to the insured. *Employers Mutual Ins. Co.* v. *Farm Bureau Mutual Ins. Co.*, 261 Ark. 362, 549 S.W.2d 267 (1977); *First Heritage Life Assur. Co.* v. *Butler*, 248 Ark. 1164, 455 S.W.2d 135 (1970).

## APPELLANT'S SUBROGATION RIGHTS

The appellant next contends that even if it were held liable under the policy for the payment of work loss benefits, it was entitled to a credit against liability out of appellee's recovery from the tortfeasor, as provided by subrogation provisions contained in the policy and by Ark. Stat. Ann. § 66-4019 (Repl. 1980). It was stipulated that over a year prior to the commencement of this action the appellee compromised and settled any and all claims of the deceased growing out of the accident against a third party tortfeasor for the sum of $50,000. The appellant was not a party to that agreement and it was not stipulated that it had knowledge of or acquiesced in the settlement in any way.

The appellee contends that where an insurer denies liability it cannot thereafter invoke as a defense that its right to subrogation has been destroyed by its insured's settlement

with release of an ultimately liable third person. In support of this position she relies on *Powers* v. *Calvert Fire Ins. Co.,* 216 S.C. 309, 57 S.E.2d 638 (1950); *Dinn Oil Company* v. *Hanover Ins. Co.,* 87 Ill. App. 206, 230 N.E.2d 702 (1967); *Liberty Mutual Ins. Co.* v. *Flitman,* 234 So. 2d 390 (Fla. 1970): and *Kahane* v. *American Motorists Ins. Co.,* 65 Misc. 2d 1065, 319 N.Y.S. 2d 882 (1971). In some of these cases the courts held the insurer was estopped to raise these defenses where it had by its conduct induced the insured to pursue a tortfeasor or had acquiesced and participated in settlement negotiations without asserting its subrogation rights. Others found the insurer to have waived its subrogation rights by denying liability under the policy and thus forcing the insured to pursue the third party.

In the matter before us for review we are not required to address the soundness of these decisions for they would clearly have no application. Where a case is submitted to the court on a complete statement of facts, the burden is on the party seeking to recover to show his right from the facts agreed upon and he may not claim that there are other facts which the court should or may presume. *Lasley* v. *Bank of Northeast Arkansas,* 4 Ark. App. 42, 627 S.W.2d 261 (1982). The agreed statement of facts contains no indication that appellant induced or otherwise encouraged appellee to pursue the third party or that it had knowledge of, or had acquiesced in any way in her settlement. Nor does the agreed statement of facts indicate that appellant ever denied liability under the policy. The agreed statement of facts merely sets forth that demand was made but that "no payment was received." There are many instances in which payment under the policy might be delayed without a denial of liability. The denial of liability first appears in the answer of the appellant, which was filed many months after the settlement agreement extinguishing its subrogation rights had been effected.

No Arkansas cases have been cited where such a rule has been applied. While our courts have in some cases held a denial of liability by the insurer to constitute a waiver of certain defenses such as the insured's failure to file a timely proof of loss, the cases show a strong reluctance to find such

a waiver where it would permit a double recovery for a single wrong. *Shipley* v. *Northwestern Mutual Ins. Co.*, 244 Ark. 1159, 428 S.W.2d 268 (1968); *Black* v. *Farm Bureau Ins. Co.*, 272 Ark. 406, 614 S.W.2d 937 (1981). Nor do we view this as a defense, but an assertion by appellant of a statutory right.

Ark. Stat. Ann. § 66-4019 (Repl. 1980) contains the following provision effecting the mandatory no fault work loss coverage:

> INSURERS' RIGHTS OF REIMBURSEMENT — Whenever a recipient of, § 1 (a) and (b) [§ 66-4014 (a) and (b)], benefits recovery in tort for injury, either by settlement or judgment, the insurer paying such benefits has a right of reimbursement and credit out of the tort recovery or settlement, less the cost of collection as hereinafter defined. All costs of collection thereof shall be assessed against insurer and insured in the proportion each benefits from such recovery. Said insurer shall have a lien upon said recovery to the extent of its said benefit payments.

The appellee contends that this statute can have no application as the appellant had not paid the insured and hence was not entitled to the benefit of subrogation. The statute provides a right of "reimbursement and *credit*" for a tort recovery. In *Black* v. *Farm Bureau Mutual Ins. Co.*, supra, the appellant was injured by two joint tortfeasors. He entered into a settlement with, and released from liability only one of them in exchange for $10,000. He then brought suit against the insurer under a no fault policy provision affording coverage against uninsured motorists. The second tortfeasor was not insured. There, in applying a similarly worded subrogation statute which did not include the words "credit for tort recovery" the court said:

> The stipulation certainly makes this case less difficult than it might have been. There being no disputed facts, it is clear that had Farm Bureau paid appellant pursuant to the terms of his uninsured motorist coverage it would have been entitled to subrogation under the provisions of Ark. Stat. Ann. §

66-4006 (Repl. 1980). Therefore, when joint tortfeasor Bohannon paid $10,000 to appellant and his carrier, this amounted to collection of subrogation in advance and satisfied the liability under the uninsured motorist provision of the policy.

An individual is entitled to only one recovery for the minimum limit of the Arkansas Financial Responsibility Act. *MFA Mutual Insurance Co.* v. *Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968). If he collects only a portion of the minimum from a joint tortfeasor or any other responsible persons or organization, he may collect the balance up to the minimum from his uninsured motorist carrier. *State Farm Mutual Automobile Insurance Co.* v. *Cates*, 261 Ark. 129, 546 S.W.2d 423 (1977).

Here the recovery from the tortfeasor was $50,000, a sum which greatly exceeds the minimum coverage provided in the policy.

We conclude that the trial court erred in not taking into consideration the settlement recovery and in not giving the appellant credit for that amount in accordance with Ark. Stat. Ann. § 66-4019 (Repl. 1980) which provides that in such cases the credit allowable to the appellant out of the tort recovery should be reduced by the cost of collection. It further provides that the cost of collection shall be assessed against the insurer and the insured in the proportion each benefits from said recovery. In *Northwestern National Ins. Co.* v. *American States Ins. Co.*, 266 Ark. 432, 585 S.W.2d 925 (1979) it was held that cost of collection includes reasonable attorney's fees. Under the provisions of the statute all costs of collection, including reasonable attorney's fees, should be prorated between the parties according to the benefit each receives and not assessed solely against the insurer.

We also conclude that the trial court erred in allowing attorney's fees and penalty against the appellant. Had the issue of appellant's rights of subrogation and credit not been in issue, and the suit been solely for recovery under the policy, these allowances might have been proper under Ark.

50

Stat. Ann. § 66-4021 (Repl. 1980). However, as the action against appellant was brought after the settlement was made and it relied upon its rights set forth in the subrogation statutes referred to, the court should not have allowed attorney's fees or 12% penalty against the appellant.

We conclude that appellant was entitled to reimbursement or credit out of the tort settlement, less the cost of collection. The case is reversed and remanded for a determination and apportionment of the costs of collection and entry of a judgment not inconsistent with this opinion.

Reversed and remanded.