600 A.2d 1151

**HORACE MANN INSURANCE COMPANY**

v.

**Emmitt WORTHY, Personal Representative of the Estate of Charlotte Lorraine Worthy.**

No. 352, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Feb. 3, 1992.

Robert B. Hetherington (McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellant.

Timothy P. O'Brien (Joseph, Greenwald & Laake, P.A., on the brief), Greenbelt, for appellee.

Argued before BISHOP, GARRITY and MOTZ, JJ.

MOTZ, Judge.

In this case we hold that an estate can recover personal injury protection (PIP) benefits under a decedent's automobile insurance policy for loss of post-mortem income.

(i)

On October 26, 1988, the automobile of Charlotte Worthy (decedent) struck a light pole; she died instantly. Her father, appellee, Emmitt Worthy (Worthy), was appointed personal representative of her estate. As personal representative, Worthy made a claim against appellant, Horace Mann Insurance Company (the Company), under the PIP provision of his daughter's automobile insurance policy. The Maryland Personal Injury Protection Endorsement of the policy provided in relevant part that:

The company will pay the following benefits for loss and expense incurred because of bodily injury caused by accident and involving a motor vehicle:

\*   \*   \*   \*   \*   \*

(b) Income continuation benefits to or on behalf of each injured person who at the time of the accident was an income producer.

Worthy's claim on behalf of the Estate was for "loss of income," including income that the decedent would have earned had she not been killed. The Company refused to pay the claim on the ground, *inter alia,* that "loss of income" did not include post-mortem income. Worthy filed a Complaint for Declaratory Judgment in the Circuit Court for Prince George's County. Both parties filed Motions for Summary Judgment. The trial court (Femia, J.) granted Worthy's motion as to coverage under the policy, and denied that of the Company. The Company's sole contention on appeal is that:

The trial court erred in ruling that the decedent's estate can recover personal injury protection benefits for loss of post mortem income.

(ii)

Since decedent died instantaneously, the Company maintains that her estate is not entitled to recover "income continuation benefits." The company makes one subsidiary and one principal argument in support of that claim. We address the subsidiary argument first.

■ The Company argues that allowing recovery for loss of post-mortem income in this situation would transform liability policies into a form of life insurance. Loss of income is not recoverable under a life insurance policy. Rather, life insurance is a fixed sum, *automatically* payable upon the death of the insured. Although it is true that both in this case, and one which involves a life insurance policy, the insured is deceased, the similarities between the two situations end there. Payment of income continuation

benefits is not automatic under the policy, but rather the claimant must be an income producer *and* must prove the loss claimed. Md.Ann.Code art. 48A, § 544(a) (1991). *See Freeze v. Donegal Mut. Ins. Co*, 504 Pa. 218, 470 A.2d 958, 961 (1983) (rejecting argument that payment of PIP work loss benefits to estates of deceased victims makes PIP policy "in effect, a ... life insurance policy").

■ The Company's principal claim is that Maryland An-. notated Code article 48A, § 539 limits recovery of "income continuation benefits" under the policy to the period during which the insured is injured, but still alive. Nothing in § 539 so states. Rather § 539 simply provides:

> (a) No policy of motor vehicle liability insurance shall be issued, sold or delivered in this State ... unless the policy also affords the minimum medical, hospital and disability benefits set forth herein; ... The minimum medical, hospital and disability benefits shall include ... payment of benefits for loss of income as a result of the accident.[1]

The Company's argument is: the statute "terms the benefits available for a 'loss of income' as 'disability benefits' " and, since only a living individual can be "disabled," only a living individual may recover under the policy for "loss of income."

In support of this argument, the Company cites South Carolina and Florida cases for the proposition that the word "disability" in a state statute implies that the insured must be alive to collect "income continuation" benefits. The South Carolina and Florida cases are, however, distinguishable from the one at hand. In each of those cases the language of the insurance *policy*, not just the state no-fault statute, specifically limited recovery for "loss of income" to a "period of disability." *See Hamrick v. State Farm Mut. Auto. Ins. Co.*, 270 S.C. 176, 241 S.E.2d 548, 549 (1978)

---

1. The statute was rewritten by Chapter 555 of the Laws of 1989, effective July 1, 1989. We quote the statute that was in effect at the time of issuance of the policy, which is the statutory language upon which the Company relies.

("disability" used "in the statute *and in the policy* refers to lack of ability to earn while one is living" (emphasis added)); *Benton v. State Farm Mut. Auto. Ins. Co.*, 295 So.2d 344 (Fla.App.1974) (*policy* which provided for PIP loss of income benefits only "with respect to the period of disability of the injured person" held not to entitle estate to postmortem benefits); *Griffin v. Travellers Indem. Co.*, 328 So.2d 207 (Fla.App.1976) (same). There is no such limitation in the policy at issue here; in fact, the word "disability" does not appear anywhere in the policy near the term "loss of income." Rather, the policy limits recovery for "loss of income" only to that "incurred within three years from the date of the accident."

Accordingly, the Company's claim that § 539 itself limits the benefits recoverable under the policy is incorrect. Indeed, the Company's emphasis on the phrase "disability benefits" contained in the statute is misplaced. Since § 539 specifically provides that policies issued pursuant to it must afford *minimum* medical, hospital, and disability benefits to victims of accidents and their families without regard to fault, the emphasis is more properly placed on the word "minimum." *See Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman*, 288 Md. 151, 154–156, 416 A.2d 734 (1980). In sum, the statute acts as a floor, not a ceiling, for liability insurance policies. This is not an unusual result. Generally, insurance policies are not limited to the protection mandated by a statute, but rather can, and often do, provide greater coverage. *See generally*, 7 Blashfield, Automobile Law and Practice, § 272.10. (3d ed. 1987). *See also Mizoguchi v. State Farm Mut. Auto Ins. Co.*, 66 Haw. 373, 663 P.2d 1071, 1074 (1983) ("statutory provisions regarding basic no-fault benefits set minimum benefits, which the parties are allowed to exceed"); *National Investors Fire & Cas. v. Edwards*, 5 Ark.App. 42, 633 S.W.2d 41, 43 (1982) (no-fault statute requires "minimum coverage be provided in all policies; it does not prohibit an insurer from providing broader coverage than mandated"). Because the policy at issue here does not violate the no-fault statute in providing

greater protection than mandated, we turn to the ordinary rules of contract law to construe the terms of the policy.

(iii)

The Court of Appeals in *Little v. First Federated Life Ins. Co.*, 267 Md. 1, 296 A.2d 372 (1972), discussed the rules which apply when construing an insurance policy:

While it is true that the cardinal rule of construction is to give effect to the intent of the parties, ... when the language of a contract is clear and unambiguous, the intention of the parties entering into the agreement should be gathered from the ordinary meaning of the words they have selected.... "Where a contract is plain as to its meaning, there is no room for construction and it must be presumed that the parties meant what they expressed" and expressed what they meant.... Courts are not permitted to ignore provisions simply to avoid what may appear to be a hardship to one of the parties.

*Id.* at 5, 296 A.2d 372 (citations omitted).

The language of the policy in question is clear and unambiguous; its meaning is plain. The Company painstakingly defined most of the relevant terms used in the policy.[2] Indeed, "loss of income" is the only relevant term not defined in the policy. The Company asks this court to interpret "loss of income" to mean "loss of earning capacity." The term "income," however, *is* defined by the policy.

---

**2.** The following terms are defined in the policy:

"bodily injury" means bodily injury, sickness, or disease, *including death* resulting therefrom;

\* \* \* \* \* \*

"income" means wages, salary, tips, commissions, professional fees, and other earnings from businesses or farms ...

\* \* \* \* \* \*

"income continuation benefits" means payment for *loss of income* incurred within three years from the date of the accident;

\* \* \* \* \* \*

"income producer" means a person who at the time of the accident was in an occupational status where he was earning or producing income.

(emphasis added.)

*See supra,* footnote 2. The only term that is not defined is "loss." Thus, if an ambiguity exists at all, it is limited to the construction of this word. It is well established that in the construction of contracts words should be given their ordinary meaning. *Little v. First Federated Life, supra; Kasten Constr. Co. v. Rod Enter., Inc.,* 268 Md. 318, 329, 301 A.2d 12 (1973); *Liller v. Logsdon,* 261 Md. 367, 370, 275 A.2d 469 (1971); *Coopersmith v. Isherwood,* 219 Md. 455, 463, 150 A.2d 243 (1959). In the context of an insurance policy, the ordinary meaning of the term "loss" is a "decrease in amount, magnitude or degree." *Webster's Third New International Dictionary of English Language Unabridged* (1971). Clearly, there has been a decrease in the amount of income payable to the decedent. Contrary to the Company's argument, such a decrease is no less a "loss" because her "employer had no obligation to continue to pay her or her estate." Indeed the Company conceded at oral argument that if Ms. Worthy had not died but had been so severely injured as to be unable to earn her salary, it would have paid her benefits for "loss of income" even if her employer had no sick leave or other policy which "obligated" the employer to pay her.

If we insert the policy definitions (shown in brackets below) where appropriate, the PIP benefit clause of the policy becomes perfectly clear:

> The Company will pay the following benefits for loss and expense incurred because of bodily injury [death] caused by accident and involving a motor vehicle:
>
> \* \* \* \* \* \*
>
> (b) Income continuation benefits [loss of income [salary] incurred within three years from the date of the accident] to or on behalf of each named insured who at the time of the accident was an income producer [in an occupational status where he was earning income].

Thus, in light of the unambiguous language of the policy and the purpose of § 539, the trial court did not err in holding that "income continuation benefits" provided for in

the policy included loss of future earnings of an insured who was killed instantaneously in a motor vehicle accident.

We note that this holding is in accord with out-of-state cases dealing with similar PIP questions. *See Nat'l Investors Fire & Cas. Ins. Co. v. Edwards,* 5 Ark.App. 42, 633 S.W.2d 41, 43–44 (1982) (although state no-fault statute provided only for benefits as result of "disability," policy, issued pursuant to that statute, which provided for "work loss" benefits, which did not speak of "disability," and which defined "bodily injury" to include death, held to afford work loss benefits "for loss of income from work which an injured person would have earned had he not sustained the bodily injury from which his death resulted"). *See also Mizoguchi v. State Farm Mut. Auto. Ins. Co.,* 66 Haw. 373, 663 P.2d 1071 (1983) (where insurance policy which provided for "work loss" benefits defined such benefits as "loss of ... earnings resulting from the inability of the ... insured ... to engage in ... gainful activity or a decrease in earning capacity because of accidental harm" and defined "accidental harm" as including death, work loss benefits included post-mortem income); *Freeze v. Donegal Mut. Ins. Co.,* 504 Pa. 218, 470 A.2d 958, 961 (1983) (where automobile insurance policy provided that a "victim" is entitled to recover work loss benefits, "the fact that a 'victim' dies as a result of his injuries and becomes a 'deceased victim,' makes him no less a 'victim' " for purposes of recovering post-mortem income). *Cf., Foote v. Viking Ins. Co. of Wisconsin,* 57 Wash.App. 831, 790 P.2d 659 (1990) (where income continuation benefits clause in automobile insurance policy listed death as a benefit terminating event, post-mortem income not recoverable).

JUDGMENT AFFIRMED.

APPELLANT TO PAY COSTS.

GARRITY, Judge, dissenting.

I respectfully dissent from the majority opinion as I believe it contrary to the very purpose of the legislative intent to mandate a limited form of no-fault insurance

coverage to provide personal injury protection rather than funds for an estate through life insurance.

Article 48A, Sec. 539, of the Maryland Code provides PIP coverage for medical, hospital, and *disability benefits* which include payments for loss of income. The sole and clear purpose of the Act is to supplant an insured's ability to earn income during his or her period of recuperation from injury. The ability to earn income ceases upon one's death.

As the majority construes the mandated PIP policy written by the appellant, however, the coverage is in the nature of life insurance up to $10,000 if that amount could have been earned by the decedent within three years. Such interpretation, I believe, is unduly strained and contrary to the very purpose of the Act.