Leonard H. Sakdeer, J.
In this action by an insured under the unscheduled personal property provisions of a homeowner’s policy for losses due to theft and mysterious disappearance, two legal questions of unusual interest are presented, neither of which appears to have been squarely determined by the courts of this State.
The first question is whether or not a release given by the insured to an alleged wrongdoer constitutes a defense in a subsequent action on the policy, even though the insurance company could not have recovered against the wrongdoer absent the release.
My answer to this question is no.
The second question is whether or not an insurance company is estopped from defending an action on a policy, on the ground that the insured destroyed its right of subrogation by releasing the alleged wrongdoer, where the settlement was for less than the value of the loss, the insurance company had effectively conveyed its rejection of the claim by failing to pay it for a number *1067 of months coupled with statements of disclaimer by its adjuster, and its adjuster had advised the insured to proceed against the party with which it settled.
My answer to the second question is yes.
With regard to both questions, it need hardly be pointed out that the insured may not under any circumstances recover twice for the same loss or recover more than the value of the loss. (Silinsky v. State-Wide Ins. Co., 30 A D 2d 1 [2d Dept., 1968]; cf. Connecticut Fire Ins. Co. v. Erie Ry. Co., 73 N. Y. 399 [1878].)
On December 8, 1965, the insured, a lawyer recently retired from the practice of law in this city, and then residing with his wife in Miami Beach, was duly issued a home owner’s policy by the defendant for a three-year period. The policy included coverage for unscheduled personal property at a declared value of $4,000, and additional coverage for such property away from the premises “ for 10% of the above amount but no less than $1,000.00.”
The definition of unscheduled personal property excluded from its coverage ‘1 property which is separately described and specifically insured in whole or in part by this or any other insurance.”
The policy also contained the customary clause to the effect that the company might require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by the company.
The two losses which are the subject of this lawsuit were a by-product of a decision by plaintiff and Ms wife to resume living in New York City.
First, a number of items of personal property were sent to New York City in several different shipments during October, 1966 by Eastern Greyhound Lines (Greyhound). Various articles were found missing from two of these shipments upon their arrival in New York in November, 1966. Although these sMpments had been valued in the covering bus bills at $200 each, testimony was presented indicating, and I find as a fact, that the value of the lost property was over $500.
Within a few days, plaintiff sustained a second and even more severe loss when there was delivered to Ms apartment at his request a large number of household items that had been stored with Home Storage & Warehouse Co. Inc. (Home Storage) in August, 1965, at the time plaintiff and his wife moved to Florida and which were specifically insured under a separate policy. A careful examination in the apartment disclosed two separate Mnds of loss: (a) some items were damaged, and (b) others were missing.
*1068 Quite promptly, plaintiff notified the defendant by letter dated November 21, 1966 of the two losses and of his preliminary estimate of their value. On January 21, 1967 plaintiff followed up the first letter by a detailed proof of loss, estimating the value of the Greyhound loss at $555 and the value of the missing property in the Home Storage loss at $1,081.
During the same period, plaintiff filed a proof of loss with Home Storage in which the cost of the damage was estimated at $1,200, and the value of the missing items was fixed at $995. The discrepancy between the two proofs of loss as to the total value of the missing goods is minor and of no legal significance.
On February 9, 1967, the plaintiff met with an authorized adjuster of the defendant who plainly stated the defendant’s view that neither loss was covered by the policy because of the exclusion quoted above as to property “ separately described and specifically insured”. The adjuster recommended that plaintiff pursue his remedies against Greyhound and Home Storage.
On March 15, 1967, plaintiff settled with Home Storage for $1,200 — the exact value that plaintiff had placed on the damaged merchandise, and a general release was executed.
On March 23, 1967, defendant’s adjuster reaffirmed defendant’s denial of responsibility in a note enclosing copies of the policy forms with the language underlined on which defendant relied to avoid liability.
During April, 1967, plaintiff filed a proof of loss with Greyhound, alleging the total value of the lost property to be more than $600, and in June, 1967, Greyhound sent plaintiff two checks of $100 each, which plaintiff accepted in full settlement of the claim against Greyhound.
Turning to the plaintiff’s claim with regard to the Home Storage loss, the defendant argued that it must fall since the property in question had been ‘1 separately described and specifically insured” by other insurance. However, plaintiff contended that the disappearance of the missing items most likely occurred after the property had been received by him in the basement of his building and before it was placed within his apartment, and at a time when the legal responsibility of Home Storage had terminated and its insurance policy became inapplicable.
While the evidence is far from satisfactory on this point, it is obvious that plaintiff’s claim against Home Storage had been settled on that view of what happened, since the amount received in settlement was precisely the same as the amount claimed for *1069 the damaged goods alone, and I am inclined to accept the plaintiff’s version as the more probable.
Accordingly, I hold that the missing items disappeared when the Home Storage policy had terminated, and that the loss therefore fell within the coverage of defendant’s policy.
Defendant next contended, raising the first question posed at the beginning of this opinion, that in any event the release bars recovery since it destroyed the defendant’s right of subrogation against Home Storage.
Consideration of whether a release should be given that effect even where the insurance company could not have recovered against the alleged wrongdoer most appropriately starts with analysis of the opinion of the New York Court of Appeals in Hamilton Fire Ins. Co. v. Greger (246 N. Y. 162 [1927]). In the Hamilton case, the insured had been paid $2,000 by the insurance company as the value of a car destroyed in a collision with a train. Thereafter, the insured sued the railroad for damages in connection with the collision, citing the destruction of the car as well as personal injuries. The case was settled for $3,000, and a general release was executed. The insurance company sued for a return of $2,000, alleging that its right of subrogation had been destroyed by the general release. In its opinion, the Court of Appeals noted (p. 166) that the affidavits before it did not ‘ ‘ show that the railroad company had paid to the insured the damages for which he had already recovered indemnity from the insurance company ”. The court went on to say (pp. 168-169): “ the insurance company should recover only for the loss it has sustained by that release * * # The courts of some other jurisdictions have held that a release given by the assured to an alleged wrongdoer before payment by an insurance company of the damage caused by the alleged wrongdoer constitutes a defense to an action upon the policy, regardless of whether or not recovery might have been had against the wrongdoer if no release had been given * * * We are not called upon to decide whether in the same circumstances we would reach a like conclusion. Here the insurance company asserts a claim against the assured for wrong and damages alleged to have been caused to it by the assured * * * In order to prove damage, it must show that in fact it might have recovered against the railroad company as a wrongdoer. There is no such proof in this case. ’ ’ (See Virginia Metal Prods. Corp. v. Hartford Acc. & Ind. Co., 219 F. 2d 931, 933 [2d Cir., 1955]; cf. Franklin Fire Ins. Co. v. Weinberg, 197 App. Div. 576 [1st Dept., 1921].)
*1070 The issue not necessary to decide in the Hamilton case is squarely presented here. And I am firmly of the view that the approach and result of the Hamilton case invite a similar approach and result here. I can see no persuasive reason for applying a different rule and one more favorable to insurance companies where the release purportedly affects only a potential right of subrogation than where it affects a right that has already matured by the fact of payment.
In determining that a release to an alleged wrongdoer does not bar an action under the policy where the insurance company could not have recovered against the wrongdoer (it being understood that there may be no double recovery for the same loss), I am convinced that this rule does no injury to the legitimate interests of insurance companies and that the contrary rule would impair significantly the rights of policyholders in a variety of situations.
The main impact of the rule on insurance companies will be to require them in a limited number of cases to litigate the liability of the alleged wrongdoer in an action against it by the insured rather than in an action by the insurance company against the alleged wrongdoer. I would think that the advantages and disadvantages of this would balance out in the long run.
Adoption of the view urged by the defendant would of course defeat the right of the insured in many cases to recover the value of a loss covered by an insurance policy for which the insured had paid the required premiums.
Almost equally important, it would place policyholders frequently in a state of painful uncertainty as to how to proceed when it seems likely to them but not certain that their claim against the alleged wrongdoer is not covered by the policy, at least in part — an uncertainty that may prove costly to those whose protection should be our first concern.
Surely the right of the policyholders to recover under the terms of their policies ought not to be lightly defeated on the basis of a strained and broadly expansive interpretation of a potential right to subrogation which has not matured and which is revealed by the evidence to be devoid of value in the specific case.
As to the Greyhound claim, the critical issue is different but also important. Plainly, these goods in no way came under the limiting language quoted earlier, and were thus covered by defendant’s policy. It is also clear that the release to Greyhound did destroy a potential right of subrogation, at least up to the value of $400 placed on the shipments in question.
*1071 However, I am strongly persuaded that the defendant’s conduct as already described created an estoppel which precludes its defense to the claim.
What we find here is more than a prolonged period from November, 1966 to June, 1967 in processing plaintiff’s claim — a delay that by itself might arguably not give rise to an estoppel. (Cf. Silinsky v. State-Wide Ins. Co., 30 A D 2d 1 [2d Dept., 1968], supra.) That extended period is here accompanied by a specific statement of the defendant’s adjuster rejecting the claim, as well as by the adjuster’s recommendation that plaintiff proceed against Greyhound. The plaintiff had every reason to conclude that his claim had been rejected and to act in his own best interest as he understood it. (See Dinn Oil Co. v. Hanover Ins. Co., 87 Ill. App. 2d 206; cf. Tindall v. Continental Ins. Co., 252 App. Div. 47 [4th Dept. 1937]; Waiver by Insurance Company of Eight to Subrogation, Ann. 16 ALR 2d 1269.)
It would be grossly unfair under the circumstances here disclosed to hold that a settlement for an amount significantly less than the value of the lost property defeats an action by the plaintiff to recover the difference under the policy.
However the $400 value fixed by the plaintiff in the bus bills for the shipments did effectively circumscribe defendant’s right to subrogation, and plaintiff’s recovery for the Greyhound loss must accordingly be limited to the difference between the $200 recovered on the settlement and the $400 value fixed in the bus bills.
Finally, I am of the opinion that the $1,000 limit in the policy for losses away from the premises was intended as the maximum recovery for all such losses, even if they occurred on separate occasions and under different circumstances.
Since I find that the total of the losses here proved was more than $1,000 ($995 for the Home Storage loss and $200 for the Greyhound loss), I direct entry of judgment for the plaintiff for $1,000 with interest from December 1, 1966.