JONES, Justice.
We granted certiorari to review a decision of the Court of Civil Appeals affirming the trial Court, which held that Plaintiffs/Appellants were not entitled to recover under a Homeowner’s Policy from Defendant/Appellee, State'Farm Fire & Casualty Company, for the loss of their personal property. At the time of its total destruction, the “unscheduled personal property [was in transit] away from the premises.” We reverse and remand.
The pertinent policy language, under the heading, “Description of Property and Interests Covered”, reads:
“COVERAGE B — UNSCHEDULED PERSONAL PROPERTY [$8,000],
“This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling and owned or used by an insured, while on the described premises
“This coverage also includes such unscheduled personal property while elsewhere than on the described premises, anywhere in the world:
“(1) owned or used by an Insured .
“(2) . . .
“(3) but the limit of this Company’s liability for the unscheduled personal property away from the premises shall be an additional amount of insurance EQUAL TO 10% of the amount specified for Coverage B, but in no event LESS THAN $1,000.” [1]
Also, under the heading, “Supplementary Coverages,” other types of coverage provisions read:
*804 “This policy covers [additions and alterations to buildings] FOR AN AMOUNT NOT EXCEEDING 10% OF THE LIMIT OF LIABILITY APPLICABLE TO COVERAGE B.
“This policy also covers [credit cards of the insureds] for an amount NOT TO EXCEED $1,000:”[2]
The policy provides coverage for unscheduled personal property in the amount of $8,000, if destroyed on the insureds’ premises. “This coverage also includes” such property while away from the insureds’ premises. The amount of this coverage is “an additional amount of insurance EQUAL TO 10% of the amount specified for [unscheduled personal property on the premises], but in no event LESS THAN $1,000.”
Appellants contend that under this “additional amount of insurance” provision, they are entitled to recover a total of $9,000, representing $8,000 for the total loss of the unscheduled personal property plus 10% (but in no event less than $1,000), because it was destroyed while away from the insureds’ premises.
The trial Court construed this provision of the policy adversely to the insureds and awarded judgment for $1,000, the minimum amount allowable under the policy for damage to unscheduled personal property while away from the insureds’ premises. The Court of Civil Appeals affirmed, citing Catron v. State Farm Fire & Casualty Insurance Co., 420 F.2d 487 (6th Cir. 1970).
While the Catron Court affirmed the district court’s construction of the provisions in issue adversely to the insureds, the opinion is totally void of any rationale for its holding. Indeed, the opinion is a mere Per Curiam summary affirmance.
The Court of Civil Appeals speculates on Catron’s rationale as follows:
“. . the court concluded that the policy coverage was limited to the damage which occurred while the property was away from the premises of the insured. Moreover, the court held that the insured was not entitled to the additional proceeds provided for under the provision dealing with coverage while the property remained on the insured’s premises.”
Later in its opinion, the Court of Civil Appeals opined:
“The language of the policy providing an ‘additional amount of insurance’ did not entitle the Neumanns to receive the $8,000 which was recoverable in the event of on-premises damages plus the amount which was recoverable if the property was destroyed after it had left the property of the insureds . . . Accordingly, [because the loss occurred off-premises] the only portion of the policy which they were entitled to recover under was that portion which dealt with losses occurring off-premises [being] limited to $1,000.”
The problem with this approach is that it assumes as a legal premise the very disposi-tive issue presented for review. We quote directly from Appellee’s brief:
“[Insurer] submits that the issue before this Court is the same as that asserted by the [insureds]:
“ ‘The issue presented to this Court is whether the holding of the Circuit Court that the limit of liability of the Defendant under its policy of insurance is limited to $1,000.00 for personal property “in transit” is correct.’ ”
Admittedly, given the fact that coverage for on-premises loss is $8,000 and coverage for off-premises loss is $1,000, and that the loss occurred off-premises, only one conclusion can follow: The insureds are limited to a $1,000 recovery. But, as we have seen, counsel for each of the parties are in agreement that the question we must answer is: What amount of coverage is provided by the policy for loss of unscheduled personal property away from the premises? (The actual amount of the loss exceeds $9,000.)
Having observed that Catron is a summary affirmance and that the Court of Civil *805 Appeals did not directly address the issue as we perceive it, we hasten to point out that this does not of itself compel the conclusion that the result of either opinion is incorrect. Rather, it means that we are not afforded the luxury of critiquing the rationale used by other appellate courts in construing the pivotal provisions of this policy. Thus, having no other case in point, we must now apply our own settled rules of contract construction to the verbiage of the policy and determine whether the insurer is liable for $1,000, as it contends, or $9,000, as the insureds contend.[3]
Having been favored with excellent briefs, we find it appropriate to begin our analysis by examining the respective contentions of the parties. The central thrust of the insureds’ contention is summed up in these passages from their brief:
“[T]he policy is worded in such a manner as to leave no logical doubt that the limit of the coverage for property damaged while away from the premises is to be an ‘additional’ amount, in ‘addition’ to the amount stated on the first page of the policy for Coverage B, $8,000.00 (which ‘also includes’ property located away from the premises).” [4]
[[Image here]]
“ . . . [T]he phrase ‘an additional amount of insurance’ means what it says and that full coverage [$8,000 plus $1,000] is due under the facts of this case. At the very least, the policy has been written so ‘as to reasonably import’ full liability. Even if there is an ambiguity, the insured must still prevail, especially in a case where the language in question involves ‘the extent or fact of coverage’ ”, citing Georgia Casualty & Surety Company v. Universal Underwriters Insurance Company, 534 F.2d 1108 (5th Cir. 1976); Tyler v. Insurance Company of North America, Inc., 331 So.2d 641 (Ala.1976); and Southern Ins. Co. v. Wilson, 214 Ala. 373, 108 So. 5 (1926).
The insurer argues:
“The . . . policy provides fire insurance protection for Unscheduled Personal Property, with the policy limits for such coverage set [on the Declarations Page] at $8,000.00 . . . Since the Declarations Page does not define the term ‘unscheduled personal property,’ the parties must refer to page 3 of the policy which gives a ‘description of Property and Interest Covered’ in order to ascertain the extent of coverage provided for the loss of ‘unscheduled personal property.’ .
“ . . . The limit of liability for unscheduled personal property away from the premises is clearly and unequivocally set out in clause (3) of the second paragraph under ‘Coverage B — Unscheduled Personal Property.’ . . . Since ten *806 percent of the amount provided in the Declarations Page of Coverage B is less than $1,000.00 (i. e., $800.00) petitioner would be entitled to recover, if at all, a maximum of $1,000.00.
[[Image here]]
“Two types of personal property are provided for in Coverage B. The first paragraph delineates one category thereof to be ‘unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling and owned or used by an Insured, while on the described premises . . . ’ The second paragraph provides coverage for unscheduled personal property elsewhere than on the described premises, but as noted above, clause (3) thereof limits the amount of coverage available therefor to, in this case, $1,000.00.
[[Image here]]
“Respondents would not take issue with Petitioners’ definitions of the meaning of the term ‘additional’ as used within clause (3). . . . That is, Respondents agree that they offered their insureds an ‘extra’ amount of insurance for property away from the premises, but at a limited exposure. If the ‘extra’ protection afforded by the second paragraph under Coverage B had not been included, Petitioners would have had no coverage whatsoever for their loss in the instant case.”
In sum, then, the insureds contend that the words “an additional amount” means an amount in addition to some base figure; i. e., “additional” is an adjective modifying the word “amount.” The phrase “amount of insurance” necessarily refers to the $8,000 specified in the original declaration of coverage. Thus, the “additional amount” is 10% (but not less than $1,000) of $8,000, totaling $9,000 for the loss incurred.
On the other hand, the insurer says that “additional amount of insurance” means additional coverage; i. e., in addition to $8,000 coverage for on-premises loss, the policy also provides coverage for off-premises loss in an amount equal to 10% of $8,000, but not less than $1,000. Thus, its liability for this “in transit” loss is limited to $1,000.
At first blush (primarily because of the introductory phrase of subparagraph (3)— “but the limit of . liability”), we were inclined to accept the interpretation urged by the insurer. Ordinarily, this introductory language signals an expression of restriction or reduction from an amount of coverage previously provided. Thus, from a reading of the first line of subpara-graph (3), it is anticipated that the balance of the sentence (i. e., the words that follow the verb “shall be”) will contain language consistent with the “less than ” notion of its beginning phrase.
Indeed, there is nothing in this introductory phrase to clue the reader that what follows will provide more coverage for an off-premises loss than for an on-premises loss. But the ultimate test is what language does in fact follow, and not what the introductory phrase indicates will follow to complete the sentence. In other words, the test is not what the sentence would say if it read, “But the limit of liability shall be an amount . . . equal to 10% . ”; rather, what does it say as it actually appears: “ . . . shall be an additional amount . . .
The word “additional” is not a word of limitation. It means something added to, more, or extra. In its common understanding, it does not mean less than, a part of a whole, or a reduction of something greater. Appellee contends that the use of the word “additional” is necessary to afford any coverage at all for an off-premises loss. But this contention is not borne out by the policy. The second paragraph under Coverage B, beginning with the words, “This coverage also includes”, provides the coverage. Subparagraph (3) is not a “coverage” but an “amount of coverage” provision.
The insurer summarizes its position:
“ . .To paraphrase the instant policy, the unscheduled personal property coverage ‘includes’ ‘on-premises’ protection and a more limited ‘off-premises’ protection. Together, the two paragraphs set forth the total package of protection provided under Coverage B. *807 “ . . . under the language of these provisions, it cannot be assumed that by qualifying under one paragraph, the insured automatically qualifies for coverage under the other paragraph.”
The effect of this argument is that the word “additional” should not be so interpreted as to defeat the clear and obvious “pattern” or “structure” of the coverage as expressed in the overall policy provisions. Here, again, our initial impression favored this approach. But, as our pari materia rule of construction admonishes, we have looked to the entire contract (insurance policy) in an effort to seek out and compare similar “limit of liability” provisions in other coverage contexts.[5]
We have found two such provisions which are set out in the quoted portion of the policy above. Under “Supplementary Coverages,” paragraph 2, the coverage for certain loss to additions and alterations to non-owned premises is “for an amount not exceeding 10% of the limit of liability applicable to Coverage B.” Under Paragraph 5 of this same heading, the policy covers loss through forgery of credit cards “for an amount not to exceed $1,000.”
The adroitness of the drafters in leaving no possible room for misinterpretation as to the exact amount of coverage in either of these two separate provisions convinces us that the same drafters used the word “additional” in the subject provision as a word of art — intending specifically to increase the maximum coverage for off-premises loss to 10% above that provided for on-premises loss. To have intended a contrary result, this “amount of coverage” provision (sub-paragraph (3)) need only to have omitted the word “additional.”
Because of our conclusion that the drafters of the policy inserted the word “additional” as a word of art, intending to add to, rather than to reduce, the coverage for the specified loss, we find it unnecessary, and, indeed, inappropriate, to invoke the “ambiguity” rule. As this Court stated in Canal Insurance Company v. Stidham, 281 Ala. 493, 205 So.2d 516 (1967):
“When the verbiage of an insurance contract leaves no doubt of the intention of the parties, the rule that the contract, if ambiguous, must be construed favorably to the insured, does not apply.”
See also, Billups v. Ala. Farm Bureau Mut. Cas. Ins. Co., 352 So.2d 1097 (Ala.1977) (Ambiguity will not be inserted by strained and twisted reasoning into insurance contracts where such ambiguities are non-existent). For this Court to hold otherwise would be to the discredit of discerning craftsmen in their painstaking draftsmanship of the document in question.
REVERSED AND REMANDED.
FAULKNER, J., concurs.
TORBERT, C. J., and SHORES, and BEATTY, JJ., concur in the result.
BLOODWORTH, MADDOX, ALMON and EMBRY, JJ., dissent.

. The policy does contain further references to Coverage B. Under “Supplementary Coverages,” appears: “Property in transit shall be subject to the limit of liability for unscheduled personal property away from the premises.” Except to negate more explicit coverage provisions for “in transit” loss to personal property, this language is surplusage and contributes nothing to the task at hand — the interpretation of the phrase, “an additional amount of insurance” in subparagraph (3) above. One other reference appears in the quoted portion of the policy and is discussed in the latter part of the opinion; and another reference to Coverage B appears under the heading, “Automatic Removal” — not here applicable.

. These latter two provisions, under “Supplementary Coverages,” have no direct bearing oh the loss in question, but we include them here because of our later reference to these provisions by way of analogy for analytical purposes.

. We have not ignored two other appellate decisions cited by Appellee: Olguin v. Allstate Insurance Co., 71 Wis.2d 160, 237 N.W.2d 694 (1976) and Kahane v. American Motorists Insurance Co., 65 Misc.2d 1065, 319 N.Y.S.2d 882 (Civ.Ct.1971). The Oiguin Court held: “[The pivotal] clause provides for a limit of liability ‘equal to 10 percent of the amount specified for Coverage C, but in no event less than $1,000.’ ” The Kahane Court ruled that the “additional coverage” provision for loss of non-premises personal property limited recovery to $1,000. Neither case furnishes any basis for the interpretation of the phrase “additional amount of insurance” — the crucial language in the instant case; and neither case involves an “in transit” loss.

. The Neumanns, through counsel, also insist that a significant difference between their policy and the policy in Catron is that here the policy verbiage states, “This coverage also includes . . . ” while the Catron verbiage states, “This policy also covers . . . .” Although counsel for the insurer refutes any material difference, he admits that Appellants’ counsel is factually correct.
We have not been cited by either counsel to the source of their information concerning the contents of the Catron policy. Perhaps resourceful counsel have examined the court records in Catron, for we note that Appellants’ brief quotes at length from the policy in Catron and Appellee’s brief acknowledges the factual variances pointed out by Appellant. Because we perceive no significant distinction in the legal effect between the verbiage of the instant policy and the alleged verbiage in the Catron policy, we have not pursued further research to ascertain the accuracy of the alleged language in the Catron policy. In other words, assuming the variance in language as claimed, we reject this portion of Appellants’ contention.

. See Miller v. Liberty National Life Insurance Co., 243 Ala. 250, 9 So.2d 132 (1942).