**EMPLOYERS REINSURANCE CORPORATION, Plaintiff,**

v.

**JEFFERSON PILOT FINANCIAL IN-SURANCE COMPANY, f/k/a Chubb Life Insurance Company of America, Defendant.**

No. CIV.A. 01–2123–KHV.

United States District Court, D. Kansas.

Nov. 20, 2001.

Charles W. German, David J. Rempel, Rouse Hendricks German May PC, Kansas City, MO, for plaintiff.

Jeffrey J. Simon, Patrick D. Kuehl, Jr., Blackwell Sanders Peper Martin LLP, Kansas City, MO, for defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

■ Employers Reinsurance Corporation ("ERC") brings suit against Jefferson Pilot Financial Insurance Company ("Jefferson Pilot"), formerly known as Chubb Life Insurance Company of America ("Chubb"), to recover adjusted professional liability insurance premium payments. Jefferson Pilot has filed counterclaims for injurious falsehood and recoupment. This matter comes before the Court on Defendant's Motion To Dismiss For Failure To State A Claim And Memorandum In Support ("Defendant's Motion") (Doc. # 7) filed June 25, 2001 and Plaintiff's Cross–Motion For Summary Judgment And Motion To Dismiss Counterclaim (Doc. # 12) filed August 1, 2001.[1] Because Jefferson Pilot presents matters outside the pleadings, the Court treats its motion as one for summary judgment. See Rule 12(b), Fed. R.Civ.P.[2] For reasons stated below, the Court grants summary judgment in favor of ERC on its claim for recovery of adjusted professional liability insurance premium payments.

### Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; accord *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990); see also *Matsushita Elec. Indus. Co. v. Zenith Radio*

---

1. Jefferson Pilot has since filed an amended counterclaim. See Defendant's First Amended Counterclaim (Doc. # 21) filed September 12, 2001. On October 4, 2001, ERC filed a Motion To Dismiss Amended Counterclaim (Doc. # 27), which has just become ready for ruling (ERC filed its reply on November 16, 2001). In light of the amended counterclaim and ERC's renewed motion to dismiss, the Court overrules as moot ERC's motion to dismiss the original counterclaim.

2. ERC has already responded to the motion as one for summary judgment, see Memorandum In Support Of Plaintiff's Cross Motion For Summary Judgment And Motion To Dismiss Counterclaim And Response To Defendant's Motion To Dismiss For Failure To State A Claim ("Plaintiff's Memorandum") (Doc. # 13) filed August 1, 2001 at 2 n. 2, so no additional notice to the parties is necessary. See, e.g., *Nichols v. United States*, 796 F.2d 361, 364 (10th Cir.1986); *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, No. 94–2395–GTV, 1995 WL 36543, at *2 (D.Kan. Jan.9, 1995).

*Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. See *Applied Genetics*, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. See *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. See *Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

### Facts

The following facts are undisputed.

ERC is incorporated under the laws of the State of Missouri. Its statutory home office is in Jefferson City, Missouri, where Nicholas Monaco, its registered agent in Missouri, is located. ERC maintains its principal administrative and executive office in Overland Park, Kansas. ERC is not registered with the Kansas Secretary of State, but it is registered with the Kansas Department of Insurance and it is authorized to do business in the State of Kansas.

Until 1997, Chubb was a New Hampshire corporation with its principal place of business in Concord, New Hampshire. In 1997, Jefferson Pilot acquired Chubb. Jefferson Pilot is a Nebraska corporation. The record contains no evidence regarding Jefferson Pilot's principal place of business.[3]

In 1991, Chubb purchased a professional liability insurance policy from ERC, Policy No. LEO–80093 ("the policy") effective April 16, 1991 to April 16, 1992. Chubb renewed the policy for two consecutive annual periods before it terminated on April 16, 1994.

As part of the policy, ERC and Chubb executed a Retrospective Insurance Premium Adjustment Plan ("the Retrospective Plan") effective April 16, 1992. The Retrospective Plan provides that premium payments may be adjusted, depending on losses paid during the applicable accounting period. If incurred losses exceed a certain limit, ERC is entitled to additional premium payments. If incurred losses fall below that limit, Chubb can recover a dividend payment from ERC. More specifically, if incurred losses exceed 70 per cent of Chubb's initial premium for the policy year, Chubb must pay the difference to ERC, up to a maximum adjustment payment of 30 per cent of the initial premium. On the other hand, if incurred losses are less than 70 percent of the initial premium, ERC must return the difference to Chubb, up to 30 per cent of the initial premium. The Retrospective Plan requires the adjustment payment to be paid 23 months after the end of each accounting period, which ends on April 16 of each particular policy year. Thus, any adjustment payment for the 1993–94 policy year was due March 16, 1996.

---

**3.** Jefferson Pilot contends that its principal place of business is in New Hampshire. See Defendant's Motion at ¶ 6. ERC asserts that its contacts with Jefferson Pilot have been in North Carolina. See Plaintiff's Memorandum at ¶ 6. Neither party submits evidence to support its contention.

The Retrospective Plan defines "incurred losses" as follows:

> Incurred losses shall mean losses plus claim expense paid by [ERC] plus [ERC's] share of losses outstanding, all as a result of claims first made during such accounting period.

Retrospective Plan, Exhibit D to Defendant's Motion. The Retrospective Plan does not define the term "losses," but the underlying policy provides as follows:

> The word "loss" includes such amounts payable by [Chubb] in settlement of claims or in satisfaction of judgments up to the policy limits with all claims and individual claimants which arise out of a single act or incident being considered as a single claim for purposes of the limit of liability as stated in the Declarations.

Policy at 4, Exhibit C to Defendant's Motion.

In July 1993, investors of a failed limited partnership filed suit against Chubb and its agents. Abrams v. Chubb Sec. Corp., NASD Case No. 93–01590 ("Abrams claims"). Chubb gave notice of the claims to ERC and requested coverage under the policy. ERC denied coverage and in 1995, Chubb paid $787,500.00 to settle the Abrams case.

In August 1994, Chubb filed suit against ERC in the United States District Court for the Eastern District of Missouri to determine whether the policy covered the Abrams claims ("the recovery case"). ERC again denied coverage but in December 1995, it paid Chubb $720,000 to settle the case. As part of the settlement, Chubb executed a release which states that

> [i]t is further understood and agreed that [ERC] maintains and reasserts its position that the exclusions relied upon by it are applicable to the underlying action [the Abrams case] and denies any liability therefore whatsoever, and intends merely to avoid litigation and buy its peace.

Release Of All Claims at 2, Exhibit E to Defendant's Motion.

ERC asserts that its settlement payment of $720,000 qualifies as an incurred loss under the Retrospective Plan and seeks to recover premium adjustments. For the policy year April 16, 1993 to April 16, 1994, Chubb's initial premium was $594,204.00.[4] Under the Retrospective Plan, the maximum adjustment for this policy year is 30 per cent of $594,204.00, or $178,261.20. Excluding the $720,000 payment in regard to the recovery case, ERC paid Chubb policy losses totaling $255,701.43.[5] If the $720,000 payment is

---

4. In its memorandum in opposition to ERC's cross-motion, Jefferson Pilot controverts whether ERC has submitted sufficient evidence of the initial premium amount. See Defendant's Opposition To Plaintiff's Cross–Motion For Summary Judgment And Motion To Dismiss Counterclaim And Defendant's Reply In Support Of Defendant's Motion To Dismiss ("Defendant's Opposition") (Doc. # 16) filed August 28, 2001 at ¶ 22. To its reply brief, however, ERC attaches correspondence between counsel which indicates that the parties agree on the amount. See Exhibit B to Reply Memorandum In Support Of Plaintiff's Cross–Motion for Summary Judgment And Motion To Dismiss Counterclaim

("Plaintiff's Reply") (Doc. # 25) filed September 28, 2001.

5. Jefferson Pilot attempts to controvert the total amount of policy losses; but it has not provided sufficient evidence to raise a genuine issue of material fact in that regard. See Defendant's Opposition at ¶ 25. The affidavit of Jeffrey L. Smith merely states that Mr. Smith's calculation of losses is different, but it does not state what his calculation is. See Declaration Of Jeffrey L. Smith In Support Of Defendant's Opposition To Plaintiff's Cross–Motion For Summary Judgment at ¶ 4, attached to Filing Of Declaration Of Jeffrey L. Smith (Doc. # 18) filed August 30, 2001. Moreover, Jefferson Pilot submits no evidence which suggests that the alleged difference

included as an incurred loss for policy year 1993–94, incurred losses would exceed 70 per cent of the premium and Chubb would owe ERC $178,261.20, the maximum adjustment under the Retrospective Plan.

ERC has demanded that Chubb pay an adjustment payment for policy year 1993–94, but Chubb has refused to do so. In May 1999, ERC employed Dun & Bradstreet to collect from Chubb. On May 24, 1999, Dun & Bradstreet sent its first written demand. Beginning June 4, 1999, Dun & Bradstreet discussed the claim over the telephone with Chubb representatives in North Carolina on various occasions. Dun & Bradstreet closed its file and ceased collection activity in April 2000. On March 14, 2001, ERC sued Jefferson Pilot for breach of its obligation to pay an adjusted premium under the Retrospective Plan. See Complaint (Doc. # 1). Jefferson Pilot has filed counterclaims for injurious falsehood and recoupment. See Defendant's First Amended Counterclaim (Doc. # 21) filed September 12, 2001. Specifically, Jefferson Pilot contends that ERC published false statements to Dun & Bradstreet regarding unpaid insurance policy premiums, causing economic harm to Jefferson Pilot. Jefferson Pilot also alleges that under the Retrospective Plan, ERC owes $185,567.58 in downward premium adjustments for the 1992–93 and 1993–94 policy years.

**Analysis**

Jefferson Pilot contends that it is entitled to summary judgment on ERC's claim because it is (1) barred by the statute of limitations and (2) a compulsory counterclaim which ERC should have asserted in the recovery case. Both parties assert that they are entitled to summary judgment on the question whether ERC's pay-

ment of $720,000 constitutes an "incurred loss" under the retrospective plan.

**I. ERC's Claim**

### A. Statute Of Limitations

 The parties dispute which statute of limitations applies to the ERC claim. Jefferson Pilot contends that the claim is governed by a three-year statute of limitations under New Hampshire law, see N.H.Rev.Stat. § 508:4, while ERC advocates a five-year limitation under Kansas law. See K.S.A. § 60–511(1). Because this is a diversity action, the Court applies Kansas choice of law rules. See *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Kansas applies its own statutes of limitations, and any exceptions must be found in those statutes. See *Brauer v. Republic Steel Corp.*, 460 F.2d 801, 803 (10th Cir.1972) (Kansas has held that law of forum governs application of statutes of limitation unless exception provided.); *F.J. Joseph, Inc. v. Lida Adver., Inc.*, 2 F.Supp.2d 1425, 1427 n. 3 (D.Kan.1998) (law of forum state determines the applicable statute of limitations under Kansas law); *Menne v. Celotex Corp.*, 722 F.Supp. 662, 663 (D.Kan.1989) (Kansas applies lex fori, the law of the forum to determine statute of limitations); *Wortman v. Sun Oil Co.*, 241 Kan. 226, 232, 755 P.2d 488, 493 (1987) (statutes of limitations are procedural for purposes of choice of law), aff'd, 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988); *Green v. Kensinger*, 199 Kan. 220, 223, 429 P.2d 95, 98 (1967) (law of forum governs limitation period; exceptions must be found in law of forum).

 Jefferson Pilot asserts that under the Kansas borrowing statute, K.S.A.

---

changes the end result, i.e. that if the settlement payment is included, policy losses ex-

ceed 70 per cent of the paid premium.

§ 60–516, the New Hampshire statute of limitations applies. Section 60–516 provides that

> [w]here the cause of action has arisen in another state or country and by the laws of the state or country where the cause of action arose an action cannot be maintained thereon by reason of lapse of time, no action can be maintained thereon in this state except in favor of one who is a resident of this state and who has held the cause of action from the time it accrued.

In order for the New Hampshire statute of limitations to apply, Jefferson Pilot must show that ERC's claim arose in New Hampshire. In this case the alleged breach is Jefferson Pilot's failure to pay an adjusted premium under the retrospective agreement. The relevant question is where the alleged breach occurred.

Jefferson Pilot asserts that its failure to pay occurred at its principal place of business in New Hampshire. Kansas case law suggests, however, that a cause of action for failure to pay arises at the place where the payment is to be received. See, e.g., *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Ass'n*, 215 Kan. 937, 939–40, 529 P.2d 171, 174 (1974) (breach of obligation to pay under insurance policy arises at place where insurer is to pay loss); *Travelers Fire Ins. Co. v. Ranney–Davis Mercantile Co.*, 173 F.2d 844, 849–50 (10th Cir.1949) (same); *Lips v. Egan*, 178 Kan. 378, 379–80, 285 P.2d 767, 768–69 (1955) (cause of action for nonpayment arose in Kansas where note specified that payment was to be made in Kansas); *Swift v. Clay*, 127 Kan. 148, 272 P. 170, 171 (1928) (cause of action for nonpayment arose in Missouri where note specified that payment was to be made in Missouri); *Shearer v. Farmers' Life Ins. Co.*, 106 Kan. 574, 189 P. 648, 650 (1920).

In Travelers, the Tenth Circuit looked to all circumstances to determine where the parties had agreed to pay losses under an insurance policy. 173 F.2d at 850. As in this case, the policy was silent as to the place of payment. The Tenth Circuit noted that

> [s]ome of the elements ... bearing on the question where the cause of action arose are that the headquarters and the head office and principal place of business of the [insured] was [sic] in Arkansas City, Kansas, the policies of insurance were kept there, checks in payment of premiums were sent from that place, notices of loss and proofs of loss were made and sent from Arkansas City, all correspondence from the adjusters with respect to this claim was addressed to ... Arkansas City.

*Id.* Based on these factors, the Tenth Circuit held that payment for loss under the insurance policy was to be made in Arkansas City, and that breach of that duty occurred in Arkansas City. See *id.* Thus the Tenth Circuit decided that the cause of action arose in Arkansas City. See *id.*

Jefferson Pilot contends that it made payments under the retrospective plan from its principal office in New Hampshire. ERC responds that it received such payments at its principal office in Kansas. Neither party presents further evidence which addresses the factors discussed in Travelers. Defendant bears the burden to show that the action is untimely, and plaintiff bears the burden to prove that an exception applies. See *Koch v. Shell Oil Co.*, 52 F.3d 878, 880 (10th Cir.1995). Jefferson Pilot has not established that ERC's cause of action arose in New Hampshire. Therefore it is not entitled to summary judgment on its theory that the New Hampshire statute of limitations bars ERC's claim under the Retrospective Plan.

█ Even if Jefferson Pilot could show that ERC's cause of action arose in New Hampshire, ERC has established that for

purposes of the borrowing statute, it is a resident of Kansas. Kansas courts have not addressed the requirements for corporate residency under the Kansas borrowing statute. Drawing on analogies to this Court's decisions in jurisdictional cases, however, the Court believes that the Kansas Supreme Court would find that ERC is a resident of Kansas. See *Haas & Wilkerson, Inc. v. Berwyn Ins. Group, Inc.*, No. 94–2182–KHV, 1994 WL 566938, at *2 (D.Kan. Sept.21, 1994) (Section 60–308(b)(5), requiring contract with resident of Kansas for jurisdictional purposes, satisfied where Missouri corporation had principal place of business in Kansas); *Black & Veatch Constr., Inc. v. ABB Power Generation, Inc.*, 123 F.Supp.2d 569, 574–76 (D.Kan.2000) (same, noting that Kansas had substantial interest in dispute because corporation asserting injury had principal place of business in Kansas). Cases involving borrowing statutes in other jurisdictions support this conclusion. See, e.g., *Allegaert v. Warren*, 480 F.Supp. 817, 820 (S.D.N.Y.1979) (although plaintiff was incorporated in Delaware, it maintained principal place of business in New York and therefore was resident of New York for purposes of borrowing statute); *Drudge v. Overland Plazas Co.*, 531 F.Supp. 210, 212 (S.D.Iowa 1981) (applying Iowa borrowing statute which in turn applied Missouri borrowing statute where Missouri was defendant's principal place of business and thus its residence under Iowa law), aff'd, 670 F.2d 92 (8th Cir.1982); but see *LeBlanc v. G.D. Searle & Co.*, 178 Ill.App.3d 236, 127 Ill.Dec. 423, 533 N.E.2d 41, 42 (1988) (under Illinois borrowing statute, place of incorporation-not principal place of business-determines corporation's residence). Thus, the Kansas borrowing statute would not bar ERC's claim even if it arose in New Hampshire.

## B. Compulsory Counterclaim

 Jefferson Pilot next argues that ERC's claim is barred because it was a compulsory counterclaim in the recovery action and ERC did not assert it in that case. Rule 13(a), Fed.R.Civ.P., requires a party to state as a counterclaim "any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." *Id.* (emphasis added). Jefferson Pilot argues that ERC's current claim arises out of the occurrence which formed the basis of the recovery case because it is based on the settlement payment in that case.

Jefferson Pilot does not explain how ERC could have asserted its current claim in the recovery suit. The recovery case was filed in August 1994 and settled in December 1995. ERC's claim for payment under the Retrospective Plan did not exist at the time it filed its answer in the recovery action. The parties agree that payment under the Retrospective Plan was not due until March 16, 1996. Thus Rule 13(a) does not apply. Cf. *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1246 (C.A.Fed.1993) (claims for breach may be barred "so long as the breaches antedated the original action").

In addition, ERC's claim did not arise out of the transaction or occurrence which was the subject matter of the recovery dispute. Regardless whether ERC decided to provide coverage under the policy, its present claim is based on the Retrospective Plan. The fact that ERC premises its claim on the settlement payment regarding the recovery suit does not make its claim compulsory for purposes of Rule 13(a). See *Wells v. Woolums*, No. 96–1455–WEB, 1997 WL 471723, at *5 (D.Kan. July 30, 1997) (citing exception to compulsory counterclaim rule that arises "when a claim

necessarily depends on the outcome of a prior lawsuit and thus does not come into existence until the prior suit has terminated").

## C. Incurred Loss

The parties dispute whether ERC's payment to settle the recovery case constitutes an "incurred loss" under the Retrospective Plan. Jefferson Pilot argues that the Court should not allow ERC to claim that the settlement payment is an incurred loss because ERC insisted throughout the recovery case, and during settlement, that the Abrams claims were not covered under the policy.[6] See Defendant's Motion at 10–12. As ERC points out, however, this logic applies equally to Jefferson Pilot. In the recovery case, Jefferson Pilot insisted that the Abrams claims were covered losses under the policy; for purposes of the adjusted premium, Jefferson Pilot now claims that ERC's payment falls outside the policy. This line of analytical tit for tat is ultimately unproductive for both sides of the argument.

The interpretation of an insurance policy, like other contracts, is a question of law.[7] See *AMCO Ins. Co. v. Beck,* 261 Kan. 266, 269, 929 P.2d 162, 165 (1996). Terms in an insurance policy are generally given their plain and ordinary meaning unless the parties have expressed a contrary intent. See *Pink Cadillac Bar & Grill, Inc. v. U.S. Fid. & Guar. Co.,* 22 Kan.App.2d 944, 948, 925 P.2d 452, 456 (1996). "[T]he test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Farm Bureau Mut. Ins. Co. v.*

*Winters,* 248 Kan. 295, 300, 806 P.2d 993, 996 (1991). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.,* 248 Kan. 657, 659, 810 P.2d 283, 285 (1991). "Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail." *Id.* If the policy is not ambiguous, the Court must enforce it according to its terms. See *Am. Media, Inc. v. Home Indem. Co.,* 232 Kan. 737, 740, 658 P.2d 1015, 1019 (1983).

A plain reading of the Retrospective Plan requires the conclusion that ERC's settlement payment should be included in determining the premium adjustment. Under the Retrospective Plan, the premium is always adjusted upward or downward, depending on incurred losses during the relevant period. Its obvious purpose and effect is to keep premiums in line with indemnity and claim expenses under the policy. Under the Retrospective Plan, "incurred losses" encompass three categories of disbursements by ERC: (1) losses as a result of claims first made during such accounting period; (2) claim expenses paid by ERC as a result of claims first made during such accounting period; and (3) ERC's share of losses outstanding as a result of claims first made during such accounting period. The Retrospective Plan does not define what constitutes a "loss" for purposes of the premium adjustment provision. For that matter, the Retrospective Plan does not define the terms "claim expense" and "share of losses out-

---

**6.** Neither party cites any legal authority for its estoppel theory.

**7.** The parties do not address which state law applies. For purposes of the pending mo-

tions, the Court assumes that either Kansas law applies or that no conflict exists between Kansas law and the applicable state law.

standing." The underlying policy likewise fails to define these terms. Furthermore, except to say that a loss *includes* "amounts payable by [Chubb] in settlement of claims or in satisfaction of judgments up to the policy limits," the underlying policy does not define the term "loss." See, e.g., *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 424 n. 9, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985) (Congress' use of term "including" in statute indicates that list is not exclusive); *Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1214 (10th Cir. 2001) (under Colorado law, "include" ordinarily signifies extension or enlargement); *Pinto v. Conn. Dep't of Env't Prot.*, No. B–87–523, 1988 WL 47899, *6 (D.Conn.1988) (plain meaning of "including" is that what follows term is representative, not exclusive). Absent any evidence that the parties intended these terms to mean otherwise, the Court is bound to give them their common and ordinary meaning.

On this record, there can be no reasonable dispute that ERC's payment of $720,000 was a result of claims which the claimants in Abrams first asserted during the relevant accounting period, April 16, 1993 to April 16, 1994.[8] Similarly, there can be no reasonable dispute that ERC's payment was a "loss" or "claim expense" under the Retrospective Plan. See, e.g., *First Nat'l Bank of Dillonvale v. Progressive Cas. Ins. Co.*, 94 Ohio App.3d 368, 640 N.E.2d 1147, 1148 (1993) (ordinary meaning of "loss" is "the act or fact of losing: failure to keep possession") (citing Webster's Third New Int'l Dictionary ("Webster's") (1986) at 1338); *Horace Mann Ins. Co. v. Worthy*, 90 Md.App. 273, 600 A.2d 1151, 1154 (1992) (in insurance policy, ordinary meaning of "loss" is "decrease in

amount, magnitude or degree") (quoting Webster's (1971)). Regardless whether the Abrams claims were covered by the underlying policy, ERC's payment of $720,000 represented a "loss" to ERC as a result of the Abrams claims. The payment also represented a "claim expense" paid by ERC as a result of the Abrams claims. The Retrospective Agreement did not require ERC to concede coverage liability as a condition to recovering an adjusted premium.[9] Accordingly, Jefferson Pilot's premium should be adjusted to account for the $720,000 payment.

### D. Prejudgment Interest

 Under Kansas law, the Court may allow prejudgment interest on liquidated claims. See K.S.A. § 16–201; *Miller v. Botwin*, 258 Kan. 108, 119, 899 P.2d 1004, 1011–12 (1995). "A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation." *Id.*, 258 Kan. at 119, 899 P.2d at 1012. The fact that parties dispute liability does not preclude a grant of prejudgment interest. See *id.*

Jefferson Pilot asserts that ERC is not entitled to prejudgment interest beginning March 16, 1996, because ERC did not demand payment until October 1996, and ERC did not respond for two and half years to its request for a written explanation of the claim. Plaintiff counters that Jefferson Pilot had equal access to the figures necessary to compute the adjusted premium under the Retrospective Plan. Neither party cites record evidence to support their assertions. Accordingly, the

---

**8.** The claimants filed suit in July 1993, and the record contains no evidence that they first asserted their claims at an earlier date.

**9.** Under Jefferson Pilot's argument, if ERC reimbursed Jefferson Pilot for the expenses of

defending a claim under a reservation of rights, such payment could not be included in determining the retrospective premium adjustment because ERC did not concede coverage.

Court will overrule both motions with respect to ERC's claim for prejudgment interest.

**IT IS THEREFORE ORDERED** that Defendant's Motion To Dismiss For Failure To State A Claim And Memorandum In Support (Doc. # 7) filed June 25, 2001 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that Plaintiff's Cross–Motion For Summary Judgment And Motion To Dismiss Counterclaim (Doc. # 12) filed August 1, 2001 be and hereby is **SUSTAINED in part and OVERRULED in part.** The Court sustains ERC's cross-motion for summary motion on its breach of contract claim. ERC is entitled to judgment in the amount of $178,261.20. The Court overrules ERC's cross-motion for summary judgment regarding its claim for prejudgment interest. In addition, the Court overrules as moot ERC's motion to dismiss Jefferson Pilot's counterclaims. ERC's claim for prejudgment interest and Jefferson Pilot's counterclaims remain pending in the case.